Argued and submitted September 3, 1987, decisions of Court of Appeals and trial court reversed, case remanded to circuit court for further proceedings February 17, 1988

# STATE OF OREGON,
*Respondent on Review,*

*v.*

# DANNY STEWART WISE,
*Petitioner on Review.*

## (TC 10-86-03339; CA A41526; SC S34080)

749 P2d 1179

Stephen J. Williams, Deputy Public Defender, Salem, filed a petition for review and appeared on behalf of petitioner.

Jonathan H. Fussner, Assistant Attorney General, Salem, appeared on behalf of respondent on review. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

PER CURIAM

## PER CURIAM

This case concerns the legality of an entry and search of a hotel room by police officers under Article I, section 9, of the Oregon Constitution.[1] The trial court allowed use of the evidence obtained from the search, and defendant Danny Wise was convicted of racketeering involving controlled substances. ORS 166.725. The Court of Appeals affirmed from the bench. 85 Or App 223, 736 P2d 229 (1987). We reverse and remand the case to the circuit court.

The police received information that a reputed methamphetamine manufacturer, Danny Aldrich, and an associate, Cathy Oberholtzer, would be selling drugs at the Valley River Inn in Eugene on October 10, 1985. The police had been pursuing Aldrich since he blew up his drug laboratory on October 8. They suspected that he planned to leave the country to evade arrest after selling a large quantity of drugs.

Officers went to the Inn armed with arrest warrants for Aldrich and Oberholtzer. A hotel clerk told the officers that a woman matching Oberholtzer's photograph had checked into room 312 under the name Vicky Bly. The police guarded the hotel wing containing room 312. The officers stopped and questioned people who attempted to enter or leave the area.

More than three hours passed between the officers' arrival and their arrest of Wise. During that time the police learned that a man who carried a gun and $30,000 was going to room 312 to a party with "Danny." The man was arrested. Another man known to associate with Danny Aldrich was seen in the parking lot of the hotel. When questioned, he said he was staying with his wife in the hotel. A woman emerged from room 312. When she was seized and questioned, the police learned that the hotel clerk had been mistaken in identifying her. The woman occupying room 312 was Vicky Wise, not Cathy Oberholtzer. Wise informed the police that she was staying in room 312 with her husband Danny Wise. She told

---

[1] Article I, section 9, of the Oregon Constitution provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.—"

police she had registered under her birth name because she and her husband were working out marital difficulties and wished to protect their privacy. She was carrying an unspecified amount of "rose pink" methamphetamine, the kind Aldrich was known to manufacture, which the police seized.

Approximately one and one-half hours later an officer dressed as a hotel employee delivered food to room 312 and learned that the male occupant was not Danny Aldrich. At this point other police officers entered the room. They arrested the occupant, Danny Wise, and searched the room. The methamphetamines discovered in a drawer in a paper bag were used in the present prosecution of Wise.

The first question is whether the police had probable cause to believe that the "Danny" in room 312 was Danny Aldrich for whom they had an arrest warrant. In reviewing this decision, we have only the record and the arguments in the parties' briefs. Regrettably, the record contains no order disposing of the suppression motion. We have recently called upon trial judges to make findings of the facts upon which they rely to support legal conclusions in suppression hearings. *State v. Dimeo,* 304 Or 469, 478 n 4, 747 P2d 353 (1987); *State v. Bates,* 304 Or 519, 527-28, 747 P2d 991 (1987).

■ It is the task of the trial judge to make findings of historical fact. This means nothing more or less than that the trial judge must evaluate the evidence, resolve conflicts therein, find what happened and set forth (preferably in writing) what the judge finds. Of course, the judge will also set forth the judge's conclusions of law that flow from what the judge may find happened. With regard to the entry, all we have here is the following oral ruling:

> "Well, let me say this: I am comfortable with indicating that—at this point, that [I] certainly would find that the testimony of the officers is credible, that I also would find that the entry into the room at the Valley River was legal, that it would be permissible." Tr at 166.

These are not findings of historical fact. They are not findings of what happened; moreover, judges should not "indicate"

what they "would find," they must "find."[2]

■ ■ Even assuming that there was probable cause to believe Aldrich occupied the room, however, the search that followed cannot be sustained. An arrest warrant does not support a search of the premises where the arrested person is found. *State v. Owens,* 302 Or 196, 200, 729 P2d 524 (1986) ("In order to justify a search, incidental to an arrest, the arrest must be for a crime, evidence of which reasonably could be concealed on the arrestee's person or in the belongings in his or her immediate possession at the time of the arrest."); *Chimel v. California,* 395 US 752, 89 S Ct 2034, 23 L Ed 2d 685 (1969).

The state's claim that "exigencies" compelled the warrantless search of the room is not convincing. The officers believed from the beginning of their investigation that the arrestee would be in possession of a large quantity of drugs, and they no doubt expected to search for and seize contraband located on the premises at the time of arrest. They could have obtained a search warrant, either before they arrived at the hotel or during the three-hour investigation.[3]

The decisions of the Court of Appeals and the trial court are reversed.[4] The case is remanded to the circuit court for further proceedings.

---

[2] This court mildly implored trial judges to make findings of historical fact as early as *State v. Chinn,* 231 Or 259, 262-63 n 1, 373 P2d 392 (1962). The Court of Appeals more emphatically put the matter in *State v. Johnson/Imel,* 16 Or App 560, 570-71, 519 P2d 1053 (1974). These supplications seem to have fallen on deaf ears; henceforth, the Court of Appeals should not hesitate to send cases back to the trial courts for requisite findings of historical fact when trial courts fail in their obligations.

[3] One relevant consideration with regard to exigencies might be whether the police attempted to get a telephonic warrant. ORS 133.545(5); 133.693(4); *see State v. Lowry,* 295 Or 337, 363 n 14, 667 P2d 996 (1983) (Jones, J., concurring) ("Warrants can and do take hours to obtain, but this time delay is not necessary with the advent of current electronic and legislative innovation. Today a warrant can be obtained in a matter of minutes and be lawful.") The record here contains nothing on this point.

It was the present unavailability of a general speedy warrant procedure that led the court to allow an exception for warrantless searches after stops of mobile vehicles, as Justice Jones noted in *State v. Brown,* 301 Or 268, 278 n 6, 721 P2d 1357 (1986), and *State v. Bennett,* 301 Or 299, 310, 721 P2d 1375 (1986) (Jones, J., concurring).

[4] The defendant's motion to suppress before the trial court also challenged a search of defendant's residence which occurred four months after the hotel room search. The legality of this search was not challenged in the petition for review, which argued only that the "warrantless entry of police into defendant's hotel room violated his statutory and constitutional rights."