Argued and submitted January 29, 1988, conviction vacated and remanded with
instructions March 8, 1989

## STATE OF OREGON,
*Respondent,*

*v.*

## EDITH ANNE PRUETT,
*Appellant.*

## (86-1692; CA A43102)

770 P2d 70

Lawrence J. Hall, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Leslie Jo Westphal, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

Defendant was indicted for possession of a controlled substance, ORS 475.992(4), and driving under the influence of intoxicants. ORS 813.010. The jury acquitted her of DUII but convicted her on the possession charge. She appeals and assigns as error that the court denied her pretrial motion to suppress a compact, with a powder residue in it, that the police seized from her purse without a warrant at the North Bend Holding Facility, a urine sample that she gave at that jail and any analysis of the powder residue or urine sample. She also assigns as error that the court denied her motion for an independent forensic expert, at state expense, to reexamine the urine sample and then refused to reconsider its denial. We reverse in part and affirm in part.

On August 26, 1986, the police responded to a midnight call. The dispatcher directed an officer to a residential address to investigate a report that an intoxicated person was ramming other cars and threatening to blow up the residence. When the officer arrived at the address, defendant walked toward him and screamed that she had rammed her husband's truck on purpose and that she was going to kill her husband. She was agitated, and her speech was slurred. The officer smelled a "moderate" odor of alcohol on her breath. He saw that two vehicles were parked in the driveway and that both were damaged. He gave defendant *Miranda* warnings and arrested her for DUII and criminal mischief. ORS 164.345. The officer took her to the jail, which was fifteen minutes away. During the trip, he asked her if she had been drinking. She said that she had drunk six glasses of wine in the past five hours.

At the jail, the officer saw bruised needle marks located over the veins on defendant's arms. Defendant told him that the marks were there because her husband had held her down and injected her with methamphetamine. The booking officer searched defendant's purse and found a folding mirror or compact. It was closed. She opened it and found a small amount of white powder. In response to a question by the arresting officer, defendant said that it was methamphetamine. The officer then gave defendant a breath test, which showed a blood alcohol content of .08 percent. The booking officer then asked defendant if she would give a urine

sample. Defendant said that she would. The State Crime Detection Laboratory tested the powder and the sample. The test of the powder showed "indicative" for methamphetamine; the urine sample showed "strongly positive" for methamphetamine.

The court denied defendant's motion to suppress:

"The search incident to an arrest—I think it would have been a proper search under that. The officer I think acted reasonably. There is no coercion; no threats or promises. His testimony, as I recall, was that after the .08 it was his opinion that she was acting much worse than the ordinary .08, in that her conduct at the scene reflected someone with either a heavier blood alcohol content or maybe something in addition to the blood alcohol, and certainly the search I think would have been proper incident to an arrest.

"I think the inventory search [sic] was proper also. [The booking officer] testified that there was money in various places in the purse. I can foresee that if that mirror compact was not searched there could have been a claim that there was money contained therein and a subsequent lawsuit against the county for not having looked at that.

"Also, I think that under the circumstances, with a .08 and the type of conduct that was being displayed by [defendant]; the admission to having been injected with [methamphetamine], if they had not searched and subsequently found what type of product or drug was involved there could have been some liability for not further investigating the exact nature of what the intoxicant was and I could foresee liability on the part of the county for not doing that."

The state does not argue that the search of the compact at the jail was proper as an "inventory" of the purse. It was not. The court did not find, and the evidence does not support, that the booking officer searched the compact "pursuant to a properly authorized administrative program" that left her no discretion but required her to search it. *State v. Atkinson*, 298 Or 1, 10, 688 P2d 832 (1984). Indeed, she did not even list the compact on the inventory sheet, but wrote "one grey purse with contents."[1]

The state contends that the officer could open the

---

[1] The state does not argue that the powder is admissible because it was discovered "in plain view" during an inventory. It was not.

compact without a warrant, because it was a search incident to arrest. Defendant argues that the search of the compact violates Article I, section 9, of the Oregon Constitution and the Fourth Amendment. She contends that the search of her compact was not a search incident to arrest, because the search was not close in time and space to the arrest, and the search had reached a logical stopping point by the time that she arrived at the jail.

■ We consider the validity of the search under the state constitution first. *State v. Kennedy,* 295 Or 260, 262, 666 P2d 1316 (1983). In *State v. Caraher,* 293 Or 741, 653 P2d 942 (1982), the police arrested the defendant for possession of a controlled substance and searched her purse on the way to the holding facility. The court held that the warrantless search was justified as a search incident to arrest. Although the defendant no longer had access to her purse and the search could not be for protection of the police or to prevent destruction of evidence, it related to the crime for which she was arrested and was close in time and space to the arrest. 293 Or at 759. Here, the search of defendant's compact at the jail was not valid as a search incident to the arrest for DUII, because it was not close in time to that arrest; neither was the scene of that arrest close in space to the search at the jail. *State v. Caraher, supra.*

Even though the search was not valid as a search incident to the DUII arrest, we must decide whether it is valid as a search incident to an arrest for possession of a controlled substance. In *State v. Owens,* 302 Or 196, 729 P2d 524 (1986), the police officer arrested the defendant for theft. During a search of the defendant's purse, the officer saw a vial containing white powder that he believed was a controlled substance. The officer then seized and searched two compact mirrors in her purse. One contained a small clear packet that also contained a white powder. The defendant told him that she thought it was cocaine. The court upheld the search of the compact mirrors as valid incident to an arrest for possession of a controlled substance, although the defendant was not charged with that offense until several weeks later. It ruled that "[w]hen there is probable cause to arrest a suspect for a crime, a reasonable search incident to arrest for evidence of that crime may be upheld, even if the officer does not articulate to the arrestee that this is the crime for which he is being

arrested and searched." 302 Or at 204. The search must be reasonable in time, space and intensity, as *Caraher* requires, but reasonableness is judged "as of the time the officer has probable cause to arrest for the new crime." 302 Or at 205.

■■ Here, it can be inferred from the trial court's statements that it believed that the officer had probable cause to arrest defendant for possession of a controlled substance after the officer learned the results of the breath test. The record, however, shows that the booking officer's search occurred before the arresting officer had administered the breath test. Its results, therefore, could not supply probable cause for the search. On the other hand, the officer's observations of the bruised needlemarks on defendant's arms and her statements that they were the result of injections of methamphetamine could supply probable cause for an arrest for possession of a controlled substance. We are unable, however, to tell from the record whether either of the officers' observations or defendant's statements predated the search. The court made no findings of fact about the sequence of events during the booking procedure. Accordingly, we remand for specific historical findings on the present record.[2] *State v. Wise,* 305 Or 78, 81 n 2, 749 P2d 1179 (1988); *State v. Brown,* 94 Or App 567, 765 P2d 1241 (1989).

■ Defendant also argues that the urine sample and the evidence obtained from its analysis must be excluded under Article I, section 9, and the Fourth Amendment, because the booking officer asked for it as a result of "knowledge gained illegally observing the contents of the compact" and, therefore, it is "fruit of the poisonous tree." Regardless of whether the search of the compact was legal, the police had independent reasons for asking for the urine sample. The behavior of defendant that the officer described was not fully consistent with the level of her blood alcohol. Moreover, she told him that her husband had injected her with methamphetamine, and the officer had observed needle marks over veins in her arms.[3] Defendant does not assign as error the court's

---

[2] Because our disposition of the case rests on state grounds, we do not reach defendant's Fourth Amendment claims.

[3] The record shows that the officer's request that ·defendant provide a urine sample occurred after the observation of the bruised needle marks on her arms and her statement about them and after the officer had the results of the breath test.

conclusion that "the urine sample was voluntary" or argue that it was not. Accordingly, the court did not err when it admitted the urine sample and its analysis.

■ Defendant also assigns as error that the court denied her motion for an independent forensic expert at state expense to retest the urine sample. She argues that it was necessary to her defense. *Former* ORS 135.055(4).[4] She contends that the court's denial violated her rights under Article I, sections 10, 11 and 20, of the Oregon Constitution, the Equal Protection and Due Process Clauses of the Fourteenth Amendment. Defendant failed, however, to show "cause," as *former* ORS 135.055(4) requires, that the expense was "necessary and proper in the investigation, preparation and presentation of the case." She told the court that she had been taking an over-the-counter weight control medication that could have been mistaken for methamphetamine. At the hearing on the motion, defendant's attorney told the court that he had not been able to "work out the mechanics" of retesting by an independent laboratory. Defendant failed to show that, if her motion were granted, it would have assisted her in her defense. *See State v. Berry,* 76 Or App 1, 4, 707 P2d 638 (1985). The court did not abuse its discretion when it denied defendant's motion. Moreover, defendant makes no argument to support her claim of state or federal constitutional violations and, on these facts, we know of none.

Conviction vacated; remanded to make specific findings on motion to suppress the results of the search of the compact, including the powder residue and its analysis, and to reconsider the motion to suppress in the light of the findings; if the court then denies the motion, it shall reinstate the conviction; otherwise it shall grant a new trial.

---

[4] *Former* ORS 135.055(4) provides:

"The person for whom counsel has been appointed is entitled to reasonable expenses for investigation, preparation and presentation of the case. The person or the counsel for the person may upon cause shown, which need not be disclosed to the district attorney prior to any hearing, secure approval and authorization of payment of such expenses as the court finds are necessary and proper in the investigation, preparation and presentation of the case, including but not limited to travel, telephone calls, photocopying or other reproduction of documents and expert witness fees."