## STATE OF OREGON,
*Appellant,*

*v.*

## FELICINO MERCADO,
*Respondent.*

(J88-3474; CA A62369)

805 P2d 744

Michael C. Livingston, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Steven V. Humber, Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Sally L. Avera, Public Defender, Salem.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

## EDMONDS, J.

Defendant was charged with unlawful possession of a controlled substance. ORS 475.992(4)(b). The state appeals a pretrial order allowing defendant's motion to suppress evidence seized pursuant to a search of his car. We reverse.

The trial court made these findings of fact:

"On November 17, 1988, Trooper Hoffman of the Oregon State Police was on routine patrol in the Rice Hill area of Douglas County, Oregon. While passing a service station he observed two Hispanic subjects standing in the vicinity of a motor vehicle parked at the gasoline pumps. The officer drove by the station and returned for the specific purpose of making contact with said individuals. The only reason for making said contact was the race of the subjects and the experience of the officer with narcotics trafficking by Hispanics on Interstate 5.

"The defendant saw the officer drive by and subsequently observed the officer at the service station. He indicated that the officer 'kept looking' at him as he was standing outside the vehicle. When the defendant re-entered the car, the officer walked over, knocked on the window and asked if he could speak with him. After receiving an affirmative response, the officer asked if the defendant was [*sic*] would mind moving his vehicle from the pump area, gesturing towards the side of the service station. The defendant stated that he complied because the officer was an 'official.'

"After the vehicle was parked, the officer again made contact and told the defendant that he was free to leave, but that the officer would like to speak to him. The defendant indicated his willingness to talk, and the officer asked for his driver's license and the registration for the motor vehicle. The defendant produced the appropriate documents; the officer obtained the relevant information from them; and the officer then returned said items to the defendant.

"The officer again told the defendant that he was free to leave, but indicated that he would like to discuss a problem with him concerning narcotics trafficking on the interstate highway. The defendant indicated that the officer made references to 'Mexicans and drugs' but that he was not concerned because he was not involved. The officer next asked the defendant if they were transporting any drugs, and the defendant responded in negatively.

"The officer then asked if he could check the vehicle for drugs. In response, the defendant stepped out of the motor vehicle.

The officer inquired as to whether he had any weapons, and the defendant said that he did not. The officer then asked if he could search the defendant, and after receiving an affirmative response, the officer frisked the defendant for weapons.

"The defendant then went to the trunk of the car and opened it. He gestured for the officer to go ahead, and the officer proceeded to search that area. Nothing of significance was noted, and the officer then closed the trunk.

"The officer then proceeded to inquire about searching the interior of the vehicle, and the defendant said that he could. The officer asked the passenger to step out, but the passenger did not understand English. The defendant explained the situation to said passenger, and the individual exited the motor vehicle. The officer then proceeded to search the vehicle and eventually found the contraband in question in the area of the rear seat.

"The defendant's primary language is Spanish; however, he has, and had, adequate comprehension of English in order to understand the officer. He understood that he had the right to refuse the request of the officer to search, but allowed such because the officer was a person in a position of authority and further, he '... didn't know anything was going wrong.' "

On the basis of those findings, the court concluded that the encounter between Hoffman and defendant constituted a "stop" and that defendant's consent to the search of his car was invalid. Accordingly, the court granted defendant's motion to suppress the contraband.

The state asserts that the trial court erred in granting the motion to suppress, because what occurred was not a stop but, rather, mere conversation. It also argues that defendant voluntarily consented to the search of his car. Defendant asserts that the encounter was an unlawful stop and that his consent to search the car was involuntary.[1]

The evidence introduced at the hearing supports the trial court's findings of fact, and we will not disturb them. However, we are not bound by the court's legal conclusions. *Ball v. Gladden,* 250 Or 485, 487, 443 P2d 621 (1968).

■■ Even if Hoffman's request to defendant to move his

---

[1] He also argues that the encounter violated his state equal privileges and immunities and federal equal protection rights. That argument is without merit.

car was a stop that was not justified by reasonable suspicion, ORS 131.615(1),[2] the evidence seized pursuant to the search of the car is not subject to suppression, if defendant's consent to search was valid. Evidence discovered as a result of a consent search conducted after an illegal stop is not automatically subject to suppression as "fruit of the poisonous tree." Rather, it will be suppressed only if "it is found that the consent was gained by exploitation of [a prior] illegality or that defendant's free will was tainted by the illegal police conduct." *State v. Kennedy,* 290 Or 493, 501, 624 P2d 99 (1981).

■ We examine the totality of circumstances to determine if defendant's consent was voluntary. The record indicates that the encounter occurred during the early afternoon near a public establishment. Although Hoffman was in uniform, he was alone and on foot when he approached defendant's car. He did not use his overhead lights or siren. He asked for permission to frisk defendant and to search the trunk and the interior of the car. He advised defendant twice that he was free to leave, and the evidence amply supports the trial court's finding that defendant understood the officer's statements. The entire exchange lasted approximately five minutes. Under the circumstances, we conclude that defendant's will in consenting to the search of the interior of the car was not tainted by the officer asking him to move his car from the pump area to the side of the service station.

Finally, the consent to search was not gained by exploitation of that request. As soon as defendant moved his car, Hoffman told him that he was free to leave. However, he agreed to continue the conversation with Hoffman. After producing his driver's license and registration, defendant was again told that he was free to leave. Under the facts of this case, those acts sufficed to terminate any exploitation of the request to move the car. The trial court erred in granting defendant's motion to suppress.

Reversed and remanded.

---

[2] ORS 134.615(1) provides:

"A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that the peace officer is a peace officer, make a reasonable inquiry."