Argued and submitted May 1, 1991, affirmed March 11, reconsideration denied April 29, petition for review denied August 25, 1992 (314 Or 176)

# STATE OF OREGON,
*Respondent,*

*v.*

# CHARLES TERRELL ALLEN,
*Appellant.*

## (89CR461; CA A64892)

826 P2d 127

Gary D. Babcock, Salem, argued the cause and filed the brief for appellant.

Michael C. Livingston, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Joseph, Chief Judge,* and Deits, Judge.

DEITS, J.

Joseph, C. J., dissenting.

* Joseph, C. J., *vice* Newman, J., deceased.

## DEITS, J.

Defendant appeals his conviction for being an ex-convict in possession of a firearm. ORS 166.270. He assigns as error the trial court's denial of his motion to suppress, arguing that the stop of his car was illegal, that the officer's questions during the traffic stop exceeded the permissible scope of the stop and that the officer did not have consent to search his suitcase. We affirm.

We take the facts from the trial court's findings. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). On the evening of June 6, 1989, Officer Anderson was in a marked patrol unit, patrolling I-5 near Grants Pass. When Anderson first saw defendant's car, it was parked at a gas station. He saw a man get into the car and noticed that the car had no license plates. He followed the car and observed it follow another vehicle too closely and change lanes without signalling. Anderson turned on his car's overhead lights and pulled defendant over. He testified that the reason for the stop was "for [defendant's] following too close and the improper lane change." As he approached the car, he saw a valid, temporary license in the window. Defendant had two passengers, a man and a woman. On request, defendant gave Anderson his driver's license and vehicle registration. At that time, Officer Markee arrived in another patrol car.

Anderson then asked defendant to get out of the car. He told defendant that he would give him a warning on the violations and "let him go." He then took the license and registration back to his patrol car to run a records check. While waiting for a response on the check, defendant told Anderson that the car had been rented at the airport. Anderson described defendant's demeanor as "extremely nervous," although "polite" and "very pleasant." He "kept moving around and sticking his hands in and out of his pockets." Anderson turned off his car's overhead lights, gave defendant his warning, returned his driver's license and other papers to him and told him that he was free to leave.

As defendant walked toward his car, Anderson asked him whether he had any weapons, narcotics or large sums of money in the vehicle. Defendant said that he did not, "smiling and shaking his head at the same time." Anderson also asked

about his passengers. Defendant replied that they were friends and that they, too, did not have contraband. Anderson then asked him for permission to ''check the vehicle for any of the mentioned items.'' Defendant agreed. He also asked defendant to open the trunk. In response, defendant told the passengers to get out of the car, opened the glove box and released the trunk lid. Anderson then asked the passengers if they had any contraband. They said that they did not.

After searching the interior of the car and finding a small amount of marijuana in a passenger's purse, Anderson went to look in the trunk. He asked defendant and the passengers to identify their luggage. Defendant identified his suitcase. Anderson opened it and found two weapons and $13,500. Defendant admitted that the weapon and the money were his.

■ Defendant assigns error to the trial court's denial of his motion to suppress the evidence obtained in the search of his car. He first argues that the initial stop of his car was illegal, because it was a ''pretext stop.'' We have held that, if there is a legitimate basis for a stop, the fact that an officer may also have other motives for the stop does not make it illegal. *State v. Mesa*, 110 Or App 261, 264, 822 P2d 143 (1991); *State v. Olaiz*, 100 Or App 380, 383, 786 P2d 734, *rev den* 310 Or 122 (1990). Here, the trial court found that Anderson stopped defendant because of an improper lane change, and the record supports that finding.

■ Defendant also argues that Anderson's questions concerning drugs, weapons and cash, and his request for consent to search the car after he issued the warning, were not permissible as part of a stop for a traffic infraction. However, the trial court found that, when Anderson asked defendant about the contraband, he had already told defendant that he was free to go and that defendant understood. The court went on to conclude that, at the time of the inquiry, the stop had ended and the exchange was ''mere conversation'':

> "The question [is] can a stop be ended as Trooper Anderson tried to end it by litany [*sic*]. I believe it can be. However, I think it has to be a clear, unequivocal statement to the defendant[,] which the defendant would understand. In this case, the officer turned off his lights, returned the paperwork

to the defendant, and indicated "you are free to go," and the defendant, acknowledging that, turned to leave. So, I believe that is a sufficiently clear, demonstrably understood ending to a stop. There are shades of gray which I may not be willing to go that far with, but in this case, it's clear to me that the stop was terminated. It was understood to be terminated."

The trial court's findings are supported by the evidence. Accordingly, the conversation that followed the traffic stop was a separate exchange, and there was nothing otherwise impermissible about the inquiry. *See State v. Mercado*, 105 Or App 582, 586, 805 P2d 744, *rev den* 311 Or 482 (1991).[1]

■■    Finally, defendant contends that, although he consented to a search of his car, he did not consent to the search of his suitcase. The state has the burden to prove by a preponderance of the evidence that defendant voluntarily consented to a search. *State v. Stevens*, 311 Or 119, 136, 806 P2d 92 (1991). Defendant does not argue that his consent was involuntary, but that it did not include consent to search the suitcase.

■■    We conclude that the state met its burden to prove that defendant consented to the search of the suitcase. When police rely on consent as the basis for a search, they have no more authority than they are given by the consent. A consent to search may be confined in scope to specific items, restricted to certain areas or limited in purpose or time. *State v. Gaither*, 76 Or App 201, 205, 708 P2d 646 (1985). One factor in determining the permissible scope of a search authorized by consent is the content of the request for consent. When a request to search contains no limitations and a defendant places no limitation on the search, the scope of the allowable search may be fairly broad. *State v. Allen*, 104 Or App 519, 523, 802 P2d 91 (1990), *rev den* 311 Or 261 (1991); *State v. Gaither, supra*, 76 Or App at 205. This is particularly so when the police indicate in the request for consent that they are searching for specific items that may be found in small compartments or containers. *See State v. Lerch*, 63 Or App

---

[1] The dissent argues that "[r]egardless of what Officer Anderson told defendant that, as a matter of law defendant was not 'free to go,' until he was back in his car." We are bound by the trial court's finding that defendant understood that he was free to leave. Given that finding, it is hard to understand how the dissent reaches the conclusion that a person is "free to go" when he reaches his car, as opposed to when the person turns away from an officer to go back to his car.

707, 712, 666 P2d 840 (1983), *aff'd* 296 Or 377, 677 P2d 678 (1984); *see also* 3 LaFave, *Search and Seizure* § 8.1(c) (2d ed 1987).[2]

Here, Anderson asked defendant "if he'd mind if [Anderson] checked the vehicle for any of the mentioned items." The "mentioned items" were "any weapons," "any narcotics" or "any large amount(s) of money." Defendant agreed and placed no limitations on the search. Anderson then asked defendant if he would "mind opening the trunk." Defendant responded by releasing the trunk. After his search of the interior of the car, which included opening a purse of a passenger in the car, Anderson went to the trunk. He asked each of the persons in the car to identify his or her luggage. Defendant identified his luggage, but did not withdraw his consent or place any limitations on Anderson's search, even though it was apparent that Anderson was going to open the suitcase. *See State v. Gaither, supra*, 76 Or App at 205. We hold that, under these circumstances, defendant's consent was broad enough in scope to allow Anderson to open defendant's suitcase. The trial court's denial of defendant's motion to suppress was proper.

Affirmed.

**JOSEPH, C. J.,** dissenting.

Although we are bound by a trial court's findings of fact if there is any evidence to support them, we are not bound by the court's conclusions of law. The officer had no authority to ask defendant to get out of his car in connection with a stop for a traffic violation. ORS 810.410(3). Regardless of what Officer Anderson told defendant, as a matter of law defendant was not "free to go" until he was back in his car. Until that point, defendant was wholly within the control of the officer and was not a free agent. What the trial court described as a "litany" could not change that fact. I continue to believe that there are limitations on the authority of the police to initiate "mere conversation." What the officer did was engage in a

---

[2] The dissent charges that we give only "lip service" to the rule that the state has the burden to prove that defendant consented to the search of his suitcase. Presumably, the dissent would require police to obtain initial consent to search for a particular item, then renew consent every time they encountered a container that might contain the item. We find no authority for that view.

course of interrogation for which there was no basis in fact and for which there was no authority. *State v. Mesa*, 110 Or App 261, 266, 822 P2d 143 (1991) (Joseph, C. J., dissenting); *see State v. Porter*, 312 Or 112, 817 P2d 1306 (1991); *Nelson v. Lane County*, 304 Or 97, 743 P2d 692 (1987). The trial court's "shades of gray" test does not impress me. This officer unlawfully crossed a bright line when he initiated an unauthorized investigation.

Furthermore, the majority's conclusion that the state met its burden to prove that defendant consented to the search of the suitcase has no basis in the record in this case. Instead, the majority relies on this proposition: "When a request to search contains no limitations and a defendant places no limitation on the search, the scope of the allowable search may be fairly [*sic*] broad." 112 Or App at 74. That is a wonderful way of switching the burden from the state to the defendant. The majority gives lip service to the rule that the state has the burden to prove that defendant consented to the search of the suitcase but then invents a rule that all that the state had to prove was that defendant did not expressly forbid opening his suitcase. With all *due* respect, that is absurd.[1]

I dissent.

---

[1] Note 2 in the majority opinion, 112 Or App at 74 n 2, would, in fact, reflect my view of the law, if the whole search process here were not illegal. My authority is ORS 810.410 and the law of search and seizure under the Oregon and United States Constitutions—hard as that is for the majority to recognize.