Argued and submitted September 21, 1992; resubmitted In Banc January 6, reversed and remanded for new trial May 19, reconsideration denied August 18, petition for review denied September 21, 1993 (317 Or 584)

# STATE OF OREGON,
*Appellant,*

*v.*

# BRYAN LEE BONHAM,
*Respondent.*

(10-91-03403; CA A72941)

852 P2d 905

Janie M. Burcart, Assistant Attorney General, Salem, argued the cause for appellant. With her on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Edmund J. Spinney, Eugene, argued the cause and filed the brief for respondent.

DEITS, J.

Durham, J., dissenting.

## DEITS, J.

The state appeals from an order granting defendant's motion to suppress evidence found in the search of his vehicle. ORS 138.060(3). The issue is whether the defendant's consent to the officer's request to search the vehicle was properly obtained. We reverse.

We take the facts from the trial court's findings of fact and draw such inferences from those facts as are consistent with the trial court's ultimate conclusion. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). Oregon State Police Officer Ayres activated the overhead lights on his patrol vehicle and stopped defendant on Interstate 5 just north of Eugene for equipment violations. Defendant does not argue that the initial stop was invalid. Defendant immediately told Ayres that his license had been suspended and gave him an Oregon identification card. Ayres did a records check and then cited him for driving while suspended, ORS 811.175, and driving without insurance, ORS 806.010. He then returned defendant's identification card and told him that he was free to go. At that time, Ayres had turned off the overhead lights on his car.

Before defendant started to leave, Ayres asked him for consent to search under the tarp covering the bed of his pickup. Defendant agreed and lifted the tarp. Ayres saw engine parts and other machinery in the truck bed. He then requested defendant's permission to search the cab of the vehicle. Defendant opened the passenger door and Ayres saw a magazine clip, two bags of marijuana and a jacket with a clear plastic bag protruding from a pocket. A powder residue coated the bag. Responding to Ayres' inquiry, defendant admitted that it contained methamphetamine. Sergeant Wolf then arrived at the scene. Ayres continued his search and discovered some phone numbers and a large amount of cash. He then arrested defendant.

The trial court found:

"5. At the time of making [the request to search] Trooper Ayres did not have any reasons to suspect that there were any criminal activities going on.

"6. In requesting consent to search after returning Defendant's I.D. and giving him the citations, Trooper Ayres was following a policy established by the Oregon State Police.

"7. The only coercion involved in the officer's request for Defendant's consent to search was the inherent coercion involved in a traffic stop due to the authority of the police officer, his uniform, and the flashing warning lights."

The trial court granted the motion to suppress on the ground that the officer lacked authority to ask defendant for consent to search his vehicle.

█ The state argues that the trial court erred in granting defendant's motion to suppress because Ayres had authority to ask defendant for consent to search and because the consent was voluntarily given. We agree. The state is required to prove by a preponderance of the evidence that consent was voluntarily and knowingly given. *State v. Stevens*, 311 Or 119, 806 P2d 92 (1991). We examine the totality of the circumstances to determine if consent was the product of defendant's free will rather than the result of coercion, express or implied. *State v. Kennedy*, 290 Or 493, 624 P2d 99 (1981); *State v. Mercado*, 105 Or App 582, 805 P2d 744, *rev den* 311 Or 482 (1991). We conclude here that the state did prove by a preponderance of the evidence that defendant's consent was voluntary. The stop took place in the afternoon on a well-traveled highway. At the time that consent was obtained, only one officer was present. The officer parked behind the defendant's vehicle and did not block him in. During the course of the stop, he turned off his overhead lights. Ayres returned defendant's identification to him and told him that he was free to go before he asked for consent to search.

█ Defendant does not argue that he was coerced into giving his consent. Rather, he contends that Ayres' request for consent exceeded the permissible scope of a traffic stop and that, under the Supreme Court's decision in *State v. Porter*, 312 Or 112, 817 P2d 1306 (1991), the consent was invalid. We do not believe that *Porter* is controlling here. First, in contrast to *Porter*, the request for consent here occurred *after* a traffic stop had ended. As the trial court found, Ayres returned defendant's identification and told defendant that he was free to go.[1] It was after that that Ayres asked for consent to search.

---

[1] Contrary to the dissent's assertions, we are not engaging in factfinding that should be done by the trial court in the first instance. The trial court found that the

Although the dissent urges that *Porter* applies, even if the traffic stop had ended, the language of that case simply does not support that conclusion. In *Porter*, the Supreme Court held that it was impermissible for an officer, during a stop for a traffic infraction, to conduct a search that is not related to the purpose of the stop and for which the officer has no probable cause or consent. 312 Or at 121. *Porter* does limit what may occur during the course of a traffic stop, but it does not hold that, once a traffic stop is complete, an officer is precluded from asking for consent to search. We recently considered exactly that question in *State v. Allen*, 112 Or App 70, 826 P2d 127, *rev den* 314 Or 176 (1992).[2] In *Allen*, after completing a stop for a traffic infraction, the officer told the defendant that he was free to go, and the trial court found that he understood. We concluded that "the conversation that followed the traffic stop was a separate exchange and there was nothing otherwise impermissible about the inquiry." 112 Or App at 73. Our decision in *Allen* was consistent with *State v. Porter* and should control here.

The dissent takes the position that a request for consent made after a traffic stop is automatically impermissible based solely on the fact that it occurred after a traffic stop. We see no reason why the validity of the request and consent that follows should not be judged based on the same standard of voluntariness applied to any consent. We have held generally that there is no prerequisite of reasonable suspicion or probable cause before an officer may ask a citizen for consent to search. As we stated in *State v. Auer*, 90 Or App 459, 464, 752 P2d 1250 (1988):

"Neither the Supreme Court nor this court has ever held, or even suggested, that reasonable suspicion is a prerequisite to asking for consent to search."

We recently upheld a request to search when an officer walked up to a citizen and, without probable cause to believe that a crime had been committed or even a reasonable suspicion, asked for permission to search. We assessed the

---

officer told him that he was free to go. Whether that terminates the traffic stop is a question of law.

[2] As in this case, the dissent, in *State v. Allen*, urged that, under *State v. Porter*, the officer lacked authority to ask for consent upon the completion of the traffic stop.

totality of the circumstances and held that the consent was voluntary. *State ex rel Juv. Dept. v. Fikes*, 116 Or App 618, 842 P2d 807 (1992). The pertinent inquiry there was not whether the officer had authority to ask the question but whether, considering the totality of the circumstances, the defendant's consent was given of his own free will or was the product of coercion, express or implied. We have held that, even in circumstances where a request for consent to search followed illegal police conduct, consent is not automatically invalid. Rather, the burden on the state to prove voluntariness focuses on whether the consent was an exploitation of the prior illegality. *State v. Kennedy, supra, see State v. Mercado, supra.* The fact that a request for consent to search takes place after a traffic stop is a factor that should be considered in evaluating whether, under the totality of the circumstances, the consent was voluntarily given or was the product of coercion. However, consent should not be invalidated solely because it follows a traffic stop.

■    Finally, defendant argues that, even if the request for consent occurred after the traffic stop had ended, Ayres' actions after the traffic stop constituted a separate stop for which there was no justification. Defendant contends that because Ayres had no basis to stop defendant after the conclusion of the traffic stop, the stop was illegal and the "fruits of that stop" should be suppressed. In *State ex rel Juv. Dept. v. Fikes, supra*, 116 Or App at 622, we addressed a very similar argument. In that case, we held that the child was not stopped when a uniformed officer approached and asked for permission to search him while he was standing with a group of other youths in a park. We noted there that the explanation in *State v. Holmes*, 311 Or 400, 409, 813 P2d 28 (1991), that a stop or seizure of the person occurs when (1) an officer "intentionally and significantly restricts, interferes with, or otherwise deprives" a person of his liberty or freedom of movement; or (2) when an individual believes that that has occurred and his belief is "objectively reasonable in the circumstances."

Applying that test here, we conclude that Ayres' request for consent to search defendant after the traffic stop had ended was not a stop or seizure of his person. Ayres' request was just that—a request. He did not threaten or coerce defendant or take any action that significantly

restricted, interfered with or otherwise deprived defendant of his liberty or freedom of movement. In addition, defendant did not testify that he believed that he was not free to leave. In any event, it would not have been objectively reasonable under the circumstances for him to have believed that. As the trial court found, defendant was told that he was free to go and the only coercion involved in the officer's request for consent to search was the inherent coercion involved in any encounter with a uniformed officer. Under those circumstances, it would not have been reasonable for defendant to believe that he was not free to go. Accordingly, Ayres' request for consent was not a stop.[3] We hold that the trial court erred in granting defendant's motion to suppress.

Reversed and remanded for a new trial.

**DURHAM, J.,** dissenting.

I would affirm the trial court and, therefore, dissent.

The issue is whether the officer was authorized to request to search the truck. In addressing that issue, we are bound by the trial court's findings and draw such inferences from those facts as are consistent with the trial court's ultimate conclusion. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). Officer Ayres cited defendant, placed "zebra" stickers on the license plates,[1] returned an identification card

---

[3] The dissent asserts that the question of whether defendant's consent was voluntary is a question for the trial court. However, defendant does not argue that his consent was involuntary. Rather, as discussed above, he argues that the officer lacked authority to ask for consent and that the request constituted an impermissible stop.

[1] Or Laws 1989, ch 891, § 2, which took effect January 1, 1990, provides, in part:

"(1) [A] police officer shall * * * mark each registration plate of the vehicle with a sticker in accordance with procedures prescribed by rule by the division if the driver of the vehicle is * * * issued a citation for:

"a) Driving while suspended or revoked that is a felony under ORS 811.182(3);

"b) Driving while suspended or revoked if the suspension or revocation was for any violation of the financial responsibility laws of this state * * *."

The trial court found that "Ayres wrote out traffic citations to the Defendant for *driving while suspended, infraction,* and driving without insurance." (Emphasis supplied.) The record does not explain Ayres' authority to apply "zebra" stickers to defendant's plates for the infraction of driving while suspended, or the effect of that act on defendant's ability to leave the scene. Or Laws 1989, ch 891, § 3, provides, in part:

and told him he could go. Ayres was in uniform and his car displayed blinking amber lights visible from the rear. He asked defendant for consent to search the truck pursuant to a policy of the Oregon State Police to ask for consent to search stopped cars.[2] The request was made before defendant began to leave or before there was any significant break in the action surrounding the stop. The court made no finding that Ayres' words terminated the stop or that defendant knew that he was free to leave and ignore Ayres' request.

ORS 810.410(3) specifies the officer's authority:

"(3) A police officer:

"* * * * *

"(b) May stop and detain a person for a traffic infraction for the purposes of investigation reasonably related to the traffic infraction, identification and issuance of citation."

In *State v. Porter*, 312 Or 112, 120, 817 P2d 1306 (1991), the Supreme Court held:

"ORS 810.410(3) defines the authority of the police to respond to a traffic infraction; by implication, the statute proscribes any further action by the police, including a search, unless it has some basis other than the traffic infraction. A search that explores for evidence of other crimes or infractions is not 'reasonably related to *the* traffic infraction, identification and issuance of citation." 312 Or at 120. (Emphasis in original.)

In *Porter*, the officer stopped the defendant's car, saw an open beer can in it and searched for further evidence of an open container violation. He did not ask for consent. The

---

"Any police officer who sees a vehicle with registration plates marked as provided in section 2 of this Act being operated on a highway or on premises open to the public may stop the vehicle for the sole purpose of ascertaining whether the driver is operating the vehicle in violation of ORS 811.175 or 811.182."

[2] Ayres testified:

"Q. [D]o you receive any training in which it was recommended to you that during traffic stops that you could ask for consent to search for narcotics?

"A. Yes.

"Q. And as part of your training—is part of your training also that before you ask for this consent that you return all the documents that you've collected from them?

"A. Yes."

court suppressed evidence found during the search because, once the officer discovered an open beer can, nothing more was required to establish the infraction. The court reviewed the legislative history of ORS 810.410(3) and observed:

"From that history, we glean that the legislature sought to keep traffic infractions decriminalized and to reduce the attendant law enforcement methods as much as necessary to accomplish that goal. The legislature intended to satisfy the concerns expressed in *Brown v. Multnomah County Dist. Ct.*, [280 Or 95, 570 P2d 52 (1977)], supra, and thus to permit only minimal intrusions on Oregon drivers stopped for traffic infractions. The words of ORS 810.410(3)(b) reflect that intent by requiring that any investigation be 'reasonably related to the traffic infraction, identification and issuance of citation.' " 312 Or at 119.

The court also described the type of search that ORS 810.410(3)(b) does not prohibit:

"This is not a case in which, while acting within the scope of the statute permitting investigation of the traffic infraction, the officer observed something that gave him probable cause to investigate a crime (when, of course, the warrant requirement still must be observed or excused). Had the officer observed evidence of a crime in plain view, ORS 810.410(3)(b) would not apply to an ensuing search; the officer's authority in those circumstances would derive from other sources. *See State v. Brown*, 301 Or 268, 276, 721 P2d 1357 (1985) (describing 'automobile exception' to warrant requirement when police have probable cause to believe that a mobile vehicle, stopped by police, contains evidence of a crime). When the officer seized the open beer can in this instance, he did not observe any evidence of a crime in plain view. It was only after he undertook a separate search that anything else came to light. Under ORS 810.410(3)(b), he was not permitted to have undertaken that separate search." 312 Or at 120.

*Porter's* proscription on any police action, specifically including a search, without a basis independent of the traffic infraction, is consistent with our established view that

"[t]raffic stops should be the minimum possible intrusion on Oregon motorists, and not an excuse to begin questioning, searching or investigating that is unrelated to the traffic reason for the stop." *State v. Carter/Dawson*, 34 Or App 21, 32, 578 P2d 790 (1978), *aff'd* 287 Or 479, 600 P2d 873 (1979).

The majority argues that the officer's statement to defendant that he was free to go transformed the traffic stop into a police-citizen encounter that did not restrain defendant's liberty. *See State v. Holmes*, 311 Or 400, 407, 813 P2d 28 (1991). According to the majority, because of the transformation, the officer was not restricted from requesting a consent to search and the consent was voluntarily given, because defendant knew that he was free to leave.

That reasoning is erroneous. The legislature has chosen to restrict an officer's authority in the context of a traffic stop. Unlike in a police-citizen encounter in a park or on a sidewalk, an officer is unauthorized to stop *or detain* a driver when the reason for the stop no longer exists. *State v. Dow*, 116 Or App 542, 545, 842 P2d 430 (1992). At that point, ORS 810.410(3)(b) and *State v. Porter* forbid *any* further police action, unless it has a basis independent of the traffic infraction.

As the trial court recognized, a uniformed officer "detains" a stopped citizen by telling him that the stop is "over" and then asking him to search the car for no reason independent of the purpose of the stop. Such a request under these circumstances would detain any reasonable person from returning to his prior course of travel. It is unauthorized because it extends the detention of the driver beyond the minimum possible intrusion that the legislature meant to permit. As *Porter* makes clear, during a traffic stop, the police may investigate only those matters that are reasonably related to the purpose of the stop, and may detain the driver only for as long as it is necessary to achieve that objective.

*State v. Allen*, 112 Or App 70, 826 P2d 127, *rev den* 314 Or 176 (1992) does not justify the majority's result. *State v. Allen* did not cite or discuss *State v. Porter* or the limitations on the officer's authority in ORS 810.410(3)(b). *State v. Mercado*, 105 Or App 582, 805 P2d 744, *rev den* 311 Or 482 (1991), on which *State v. Allen* relied, upheld a consent search that resulted from mere conversation between an officer and a citizen. *Mercado* did not cite or discuss *Porter*. This case is yet another instance when the majority "downplays the significance of *State v. Porter*" in order to reach a desired but incorrect result. *State v. Mesa*, 110 Or App 261, 266, 822 P2d 143, *rev den* 313 Or 211 (1992) (Joseph, C. J., dissenting). I

would not follow *State v. Allen* here because it failed to analyze or cite the relevant statute and the most relevant authority from the Oregon Supreme Court.

Even if the trial court's analysis was legally flawed, the majority should not make the factual findings about consent that it prefers from the record. It is the trial court's task, in the first instance, to find the facts, including whether the officer's words actually terminated the stop and whether defendant gave a voluntary, intelligent consent to search. *State v. Wise*, 305 Or 78, 81, 749 P2d 1179 (1988). The state has not carried its burden on those matters in the forum where the facts must be established: the trial court.

I dissent.

De Muniz and Leeson, JJ., join in this dissent.