Argued and submitted January 29, 1987, reversed and remanded for new trial
February 10, 1988

# STATE OF OREGON,
*Respondent,*

*v.*

# GREGORY SCOTT HICKS,
*Appellant.*

(10-85-05303; CA A38947)

749 P2d 1221

John P. Daugirda, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Jens Schmidt, Assistant Attorney General, Salem, argued

the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

Defendant appeals his convictions for possession of a controlled substance and being an ex-convict in possession of a firearm, arguing that the trial court erred in denying his motion to suppress. We reverse.

On June 15, 1985, at 7:11 a.m., police officer Galick observed three individuals conversing between two closely parked vehicles in a downtown Eugene parking lot. Defendant was the only occupant of one car. As Galick drove onto the lot, defendant reached behind the seat, appeared to cover something and then drove off. After observing that the car did not have a front license plate and that defendant had failed to signal a lane change, Galick stopped the car. Defendant told Galick his name and date of birth. He said that he had left his identification at home. The police dispatcher confirmed defendant's identity.

Defendant stated that the car was his, but that he did not have the registration. Galick told defendant to look in the glove compartment for the vehicle registration. It is unclear if the direction came before or after Galick had received verification of defendant's identity. As defendant reached across the passenger seat to open the glove compartment, Galick inserted his head through the open driver's window. He testified that he did that as a safety precaution. He detected a faint odor of marijuana and saw a blue Nike athletic bag amid crumpled newspapers behind the passenger seat. Galick asked to see the bag, but defendant refused. Galick called for assistance, ordered defendant out of the car, seized the bag, smelled it and detected marijuana. He opened the bag and discovered what he estimated to be more than an ounce of marijuana. He then searched the interior of the car and seized a salt shaker, a stiletto, a razor blade and a mirror with white residue which he believed to be cocaine. In response to questioning, defendant said that he had been previously convicted of unauthorized use of a motor vehicle. Galick then opened the car's trunk, where he discovered a gun loosely wrapped in a T-shirt and various other items. Defendant was then advised of the *Miranda* rights and cited for no operator's license, driving uninsured, having no license plate and failing to signal a lane change; he was arrested for possession of a controlled sub-

stance, theft in the first degree, possession of stolen property and being an ex-convict in possession of a firearm.

■     Defendant argues that the initial stop was unlawful. We do not agree. Galick saw defendant commit two traffic infractions: failure to display license plates, ORS 481.255, and failure to signal when changing lanes. ORS 487.405(1)(b).[1] He was authorized to stop defendant and issue citations for the two infractions, which he did. ORS 484.353(2)(b).[2] The fact that Galick was also generally suspicious of defendant's activities does not render the stop unlawful. *State v. Tucker*, 286 Or 485, 493, 595 P2d 1364 (1979).

■     Defendant next challenges the lawfulness of Galick's request to see the registration. At the time of the stop, *former* ORS 481.230(4) required that "[e]very owner, upon receipt of a registration card for a vehicle, shall keep it in or on the vehicle in a manner that makes it readily available for police inspection upon request." Having made a lawful stop, Galick was entitled to approach defendant and ask him to produce his operator's license and vehicle registration. *State v. Fleming*, 63 Or App 661, 664, 665 P2d 1235 (1983).

Defendant, relying on Article I, section 9, and the Fourth Amendment, also argues that Galick violated his right against an unreasonable search and seizure when he inserted his head into the interior of his car while defendant reached to open the glove box.[3] The state argues that Galick's intrusion was justified as a safety precaution. We have held that a law enforcement officer in the course of "making an arrest or

---

[1] *Former* ORS 481.255 is *now* ORS 803.540. *Former* ORS 487.405(1)(b) is now ORS 811.375(1)(b).

[2] *Former* ORS 484.353(2)(b) is now ORS 810.410(3)(b).

[3] At the suppression hearing, Galick testified:

"Q:   Okay let me ask you this. If you put the pane of the window—if the window had not been down, would your face have been bumping into the window?

"A:   Yes, it would have.

"Q:   How much of your face would have been past the window?

"A:   I can't recall exactly, but it, looking at it—like you can see the chrome. Chrome's right to my face. So I was definitely in the car.

"Q:   Your face was basically in—

"A:   Right.

"Q:   "Within the plane of the, where the window is; is that right?"

Witness nods his head.

questioning a person of suspected criminal activity may take reasonably necessary measures to protect himself and others from injury." *State v. Miller,* 45 Or App 407, 608 P2d 595, *rev den* 289 Or 275 (1980). As explained by the Supreme Court in *State v. Bates,* 304 Or 519, 524, 747 P2d 991 (1987):

> "[W]e hold that Article I, section 9, of the Oregon Constitution does not forbid an officer to take reasonable steps to protect himself or others if, during the course of a lawful encounter with a citizen, the officer develops a reasonable suspicion, based upon specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present. As we noted in *Riley, supra,* 240 Or at 525, it is not our function to uncharitably second-guess an officer's judgment. A police officer in the field frequently must make life-or-death decisions in a matter of seconds. There may be little or no time in which to weigh the magnitude of a potential safety risk against the intrusiveness of protective measures. An officer must be allowed considerable latitude to take safety precautions in such situations. Our inquiry therefore is limited to whether the precautions taken were reasonable under the circumstances as they reasonably appeared at the time that the decision was made."

■ Applying that analysis to the facts of this case, we hold that Galick's insertion of his head into defendant's car was not reasonably necessary for his safety. The only thing offered to justify the action was his description of the encounter:

> "So, as [defendant] was going to look in the glove box, he had to reach across the passenger seat, of course. Opened it up. I bent down because I couldn't see what he was doing, to—
>
> "Q: Why were you concerned about what he was doing?
>
> "A: At every car stop, I'm always concerned about my safety. And I don't know who he is and what he's doing and wanted to make sure there isn't [*sic*] any weapons. And a glove box is a good place to have a weapon. So I'm ducking down to see what's going to come out of the glove box."

Galick's testimony simply articulates a general concern for safety and does not provide sufficiently specific and articulable facts to justify a reasonable suspicion that this defendant posed an immediate threat of injury to the officer or others present. If Galick's concern for his safety was based on other facts, they are not included in the record, and we are

unable to presume their existence. Galick's initial intrusion into defendant's car violated defendant's protected interests under Article I, section 9.

Because that issue is dispositive, we need not address defendant's remaining arguments regarding the seizure of the bag and the search of the car and the trunk.

Reversed and remanded for a new trial.