Argued and submitted November 25, 1987, order vacated and remanded for further proceedings April 20, 1988

## STATE OF OREGON,
*Appellant,*

*v.*

## JOHN MICHAEL AUER,
*Respondent.*

(C86-06-32744; CA A42304)

752 P2d 1250

Brenda Peterson, Assistant Attorney General, Salem, argued the cause for appellant. On the brief were Dave

Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Stephen F. Peifer, Assistant Attorney General, Salem.

Gareld Gedrose, Portland, argued the cause and filed the brief for respondent.

Before Warden, Presiding Judge, and Joseph, Chief Judge,* and Van Hoomissen, Judge.

JOSEPH, C. J.

---

* Joseph, C. J., *vice* Young, J., deceased.

## JOSEPH, C. J.

Defendant was charged with possession of a controlled substance and failure to present a driver's license. ORS 475.992; ORS 807.570. The state appeals from an order that allowed defendant's motion to suppress evidence seized during a search and dismissed the indictment. We vacate that order and remand for determinations of whether defendant was illegally detained and, if not, whether he consented to the search.

Officer Delong stopped defendant for driving with a defective tail light. He asked defendant for his driver's license. Defendant responded that he had no license and that his name was John Auer. Delong did not know if defendant was in fact John Auer, but he recognized that name as belonging to someone recently released from the state penitentiary. Defendant had no proof of his identity, and Delong arrested him for failure to carry a driver's license. ORS 807.570.[1]

Delong then asked defendant to step out of the car and, when he did, "patted him down." In the course of the patdown, he discovered a knife in defendant's pocket and, when Delong removed the knife, a small baggie fell out of the pocket. Delong asked defendant if he had any drugs, and defendant said no. Delong testified that he then asked, "Can I search you for drugs?" and that defendant replied, "Sure." Delong proceeded to search defendant for drugs and, in so doing, removed from defendant's pocket a small bronze-colored rectangular

---

[1] ORS 807.570 provides, in part:

"(1) A person commits the offense of failure to carry a license or to present a license to a police officer if the person either:

"(a) Drives any motor vehicles upon a highway in this state without a license, driver permit or out-of-state license in the person's possession; or

"(b) Does not present and deliver such license or permit to a police officer when requested by the police officer under any of the following circumstances:

"(A) Upon being lawfully stopped or detained when driving a vehicle.

"(B) When the vehicle that the person was driving is involved in an accident.
"* * * * *

"(4) A police officer may detain a person arrested or cited for the offense described in this section only for such time as reasonably necessary to investigate and verify the person's identity.

"(5) The offense described in this section, failure to carry a license or to present a license to a police officer, is a Class C misdemeanor."

box that appeared to be a cigarette lighter. When Delong "flicked" the lighter open, the top came off and fell to the ground. He became suspicious, because the top was not hinged and there were no "lighter components" in it. Nonetheless, he returned the lighter to defendant, handcuffed him and led him to the patrol car.

At the patrol car, Delong again pulled the lighter out and, he testified, asked defendant, "Could I flick the lighter?" Delong testified that defendant replied, "Sure, it's not mine." Defendant testified that Delong never asked on either occasion if he could flick the lighter or conduct a search. Delong opened the lighter and saw a baggie with an off-white powder in it, a small spoon and a vial. It was later determined that the powder was methamphetamine.

Spawn owned the car that defendant was driving; she arrived at the scene just after Delong had stopped the car. She apparently did not identify defendant to Delong. Officer Larsen arrived to assist Delong after the methamphetamine was discovered and just before Delong transported defendant to the police station. Larsen identified defendant.

Defendant moved to suppress "statements and evidence obtained during the course of or as a result of a search of the defendant." After a hearing, the court made findings of fact[2] and these conclusions of law:

"1. The officer exceeded the scope of his authority in inquiring of defendant regarding the contents of the bronze box, or in seeking defendant's consent to search this box.

"2. The inquiry and request for consent to search the box were unrelated to the crime for which defendant was being arrested, and was not necessary for the safety of the officer.

---

[2] *"FINDINGS OF FACT*

"1. Officer Delong stopped the defendant due to a defective tail light.

"2. Officer Delong asked the defendant to produce his driver's license.

"3. The defendant did not have a driver's license.

"4. The defendant was arrested for the traffic crime of Failing to Carry and Display an Operator's License.

"5. The defendant was searched for weapons.

"6. A small bronze box was discovered in the course of the search."

"3. No exigent circumstances appear which might have justified the inquiry."

The court allowed the motion and also dismissed the indictment. The state appeals.

█     We first address whether Delong could arrest defendant for failure to carry a driver's license.[3] Defendant argues that ORS 807.570(4) prohibits it:[4]

"A police officer may detain a person arrested or cited for [failure to carry a driver's license] only for such time as reasonably necessary to investigate and verify the person's identity."

Defendant misreads the statute. Subsection (5) defines the offense as a class C misdemeanor, and a police officer can arrest anyone who commits a misdemeanor in his presence. ORS 133.310(1)(j). Moreover, subsection (4) itself says that a person may be "arrested or cited" for violation of the statute. An arrest for violation of the statute can continue "only for such time as reasonably necessary to investigate and verify the person's identity." Arrests for not carrying a driver's license may be unusual, but they are authorized by statute.

Defendant next argues that Delong detained him after his identity was verified. Delong detained defendant pursuant to ORS 807.570 from the time when defendant said that he had no license until he was arrested on the methamphetamine charge. During that time, defendant identified himself by name, and Delong may have received over the radio a physical description of John Auer that matched defendant.[5] If Delong did detain defendant after he had verified his identity, that detention was unlawful under ORS 807.570(4), and evidence obtained as a result of the illegal detention must be suppressed, *see State v. Davis,* 295 Or 227, 237, 666 P2d 802 (1983); *State v. Valdez,* 277 Or 621, 629, 561 P2d 1006 (1977); *see also* ORS 133.683, even if defendant consented to the search. Any consent necessarily resulted from Delong's having

---

[3] Having made a lawful stop, Delong could ask defendant to show his driver's license. *State v. Fleming,* 63 Or App 661, 667, 665 P2d 1235 (1983).

[4] Both the state and defendant use the term "full custody arrest." That term is not helpful. All arrests entitle police officers to take a suspect into custody, *see* ORS 133.005(1), even if the duration of the custody may be limited. *See* ORS 807.570(4).

[5] At the suppression hearing, Delong could not recall when he received that report.

exploited the illegal detention. *See State v. Smith,* 73 Or App 287, 293, 698 P2d 973 (1985); 3 LaFave, *Search and Seizure,* § 8.2(d) (2d ed 1987). The trial court made no findings or conclusions about when defendant's identity was verified.

If defendant consented to the search while lawfully detained, then evidence derived from the search is admissible. At the suppression hearing and in this court, the state conceded that the only basis for upholding the search is consent. The trial court made no findings or conclusions about whether defendant consented but, instead, concluded only that Delong "exceeded the scope of his authority" in asking for consent, because the request for consent was "unrelated to the crime for which defendant was being arrested."

■ The trial court's premises are incorrect. An officer may request consent to search from a party lawfully in custody, and the request need not relate to the crime for which the party was arrested. *See State v. Quinn,* 290 Or 383, 394, 623 P2d 630 (1981); *State v. Hirsch,* 267 Or 613, 621, 518 P2d 649 (1979); *State v. Gaither,* 76 Or App 201, 204, 708 P2d 746 (1985). Each of those cases involves a request for consent to search unrelated to the reason for which the defendant was stopped or arrested. Defendant argues, however, that they do not apply here, because in each the police had a reasonable suspicion that the defendant had committed a crime other than the one for which he was arrested or stopped and the request for consent to search related to the suspected crime. Neither the Supreme Court nor this court has ever held, or even suggested, that reasonable suspicion is a prerequisite to asking for consent to search. The request for consent to search was proper, unless it was tainted by an unlawful detention.

■ On remand, the trial court should first determine at what point defendant's identity was verified for purposes of ORS 807.570(4). If defendant's identity was verified before Delong asked for consent to search, the suppression order shall be reinstated.[6] If, however, Delong asked for consent before defendant's identity was verified *and* if defendant consented, then the evidence seized during the search should not be suppressed.

---

[6] Dismissal was, in any event, improper.

Order vacated; remanded for further proceedings not inconsistent with this opinion.