Argued and submitted September 14, 1990, affirmed December 11, 1991, reconsideration denied February 19, petition for review denied April 28, 1992 (313 Or 211)

# STATE OF OREGON,
*Respondent,*

*v.*

# JAMES NICHOLAS MESA,
*Appellant.*

# (C 89-01-30008; CA A61992)

822 P2d 143

Paul Levy, Metropolitan Public Defender, Portland, argued the cause and filed the brief for appellant.

Katherine H. Waldo, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Joseph, Chief Judge, and Richardson* and Deits, Judges.

DEITS, J.

Joseph, C. J., dissenting.

---

* Richardson, J., *vice* Newman, J., deceased.

## DEITS, J.

Defendant was convicted for possession of cocaine, ORS 475.992, possession of less than an ounce of marijuana, ORS 475.992, and failure to display a driver's license. ORS 807.570. He appeals, assigning as error the court's denial of his motion to suppress evidence seized from his person and car. We affirm.

On December 21, 1988, officers Gray and Anderson, members of the Drug and Vice Division of the Portland Police Bureau, were in plain clothes and in an unmarked car with tinted windows when they began following defendant's car. The officers, who regularly made two or three traffic stops a week in addition to their narcotics duties, decided to stop defendant after he had made several turns without signalling. They testified that they did not suspect him of any other wrongdoing and that they had no other information about him. After the officers activated a portable blue light, defendant pulled his car over. Gray approached the car and asked defendant for his driver's license. Defendant told Gray that his license was suspended. He was unable to produce any other identification or the car's registration.

Gray decided to take defendant into custody for failure to display an operator's license until they could verify his identity. He ordered defendant out of the car while Anderson conducted a records check. As defendant was standing on the sidewalk, Gray asked him if he had any drugs or weapons on his person. Defendant said that he did not. Gray testified that he asked defendant for permission to search his person and that defendant said, "Go ahead." Defendant testified that Gray searched him without asking permission.

Gray then searched defendant's person. He testified:

"I started to check his pockets. And I felt something metal like [in] his jacket pocket—his left-pocket jacket, and I had reached in to pull that out. It turned out to be a pair of small—similar to the stainless-surgical scissors.

"And as I pulled it out, I pulled out a real small bundle of marijuana and I asked him about it. And as I was looking at the scissors, I had noticed that there was quite a bit of what appeared to be residue on the scissors; that is consistent to

me with actually cutting and trimming marijuana from the plants."

Gray asked defendant if there was more marijuana in the car. Defendant replied that there was not. Gray asked for permission to search the car. He testified that defendant consented, and the trial court so found. Gray found nothing in his cursory search of the passenger compartment but, when he opened the trunk, he found bags of cocaine and marijuana stuffed into the sleeves of a jacket. He also found a wallet in the trunk with defendant's identification and $2,700 in cash. As soon as Gray recognized the cocaine, he told Anderson what he had found. They handcuffed defendant and gave him *Miranda* warnings.

■ Defendant makes several alternative arguments in support of his position that the court should have granted his motion to suppress. First, he contends that the initial stop of his car was illegal, because it was a "pretext stop." We have held that, under Article I, section 9, if an officer is where he has a right to be and sees a driver commit a traffic infraction, the officer may stop the driver under ORS 810.410(2), regardless of any other motive that he may have. *State v. Olaiz*, 100 Or App 380, 383, 786 P2d 734, *rev den* 310 Or 122 (1990); *State v. Zigler*, 100 Or App 700, 703, 788 P2d 484 (1990). Defendant committed traffic infractions in the presence of the officers.

Defendant also argues that the stop was unlawful, because ORS 810.400 requires that police officers who enforce traffic laws must either be in uniform or show official identification. Gray and Anderson were not in uniform, and the record is silent on whether they displayed official identification. A violation of ORS 810.400 does not, itself, invalidate a stop. *See State v. Chaput*, 43 Or App 831, 833, 604 P2d 435 (1979). The stop was lawful.

■ Defendant also asserts that the police request for consent went beyond the permissible scope of the stop. We disagree. When Gray asked permission to search defendant and his car, defendant was lawfully under arrest for failure to display an operator's license. We have held that

"[a]n officer may request consent to search from a party lawfully in custody, and the request need not relate to the

crime for which the party was arrested." *State v. Auer*, 90 Or App 459, 464, 752 P2d 1250 (1988).

The offense for which the officers arrested defendant did not limit the scope of Gray's request for consent to search.

The dissent reads *State v. Porter*, 312 Or 112, 817 P2d 1306 (1991), as preventing Gray from asking defendant for his consent to search the car. *Porter* does hold that, when a person is stopped only for a traffic infraction, the police may not instigate a search "unless it has some basis other than the traffic infraction." However, it does not hold that an officer in such circumstances may not ask for consent. No justification is necessary for an officer to ask for consent. Consent may be requested following illegal police conduct, *State v. Williamson*, 307 Or 621, 772 P2d 404 (1989), or of a citizen on the street. Neither the statute nor *Porter* imposes such a limitation on officers conducting stops for traffic infractions, and it would make no sense to do so.

Defendant also contends that the circumstances of the stop and the request to search his person and car were so coercive that, even if he consented to the searches, his consent was involuntary. The trial court did not rule on whether defendant consented to the search of his person, because it held that that search was valid as a search incident to arrest. We conclude that that was a proper basis for the search of his person. A person under full custodial arrest, as defendant was, may be searched incident to the arrest to protect officer safety or to preserve evidence of the crime from destruction or concealment. *State v. Owens*, 302 Or 196, 200, 729 P2d 524 (1986). A pat-down or limited search for weapons to protect the officer is justified whenever a person is taken into custody. *State v. Owens, supra*, 302 Or at 200; *State v. Smith*, 103 Or App 113, 116, 796 P2d 665 (1990), *rev allowed* 311 Or 87 (1991). The record indicates that the officer conducted a pat-down of defendant's jacket and that he felt something metallic that could have been a weapon. He was then justified in reaching into the pocket to identify the object. When he did that, he removed both the scissors and the small amount of marijuana.

With respect to the search of the car, the trial court found that defendant did consent and concluded that the

consent was voluntary. We review the facts to assess whether they meet constitutional standards of voluntariness. *State v. Stevens*, 311 Or 119, 135, 806 P2d 92 (1991). The state must prove voluntary consent by a preponderance of the evidence. *State v. Stevens, supra,* 311 Or at 137. We judge voluntariness in the light of the totality of the circumstances to see whether the consent was given by defendant's free will or was the result of coercion, express or implied. *State v. Kennedy*, 290 Or 493, 502, 624 P2d 99 (1981).

■ We conclude that the state carried its burden of proving that defendant's consent to search his car was voluntary. There was nothing coercive about the encounter. Anderson described defendant as cooperative and the encounter as "low key." There was no testimony that the officers threatened defendant in asking for consent to search his car. Defendant argues that the fact that he did not know, when they began following him, that Anderson and Gray were police officers made the encounter coercive. However, even assuming that that added some element of coerciveness to the situation, the record shows that defendant knew that they were police officers before he consented to the search of his car. We conclude from the totality of circumstances that his consent was voluntary. The trial court properly denied the motion to suppress.

Affirmed.

**JOSEPH, C. J.,** dissenting.

I believe that the majority downplays the significance of *State v. Porter*, 312 Or 112, 817 P2d 1306 (1991). I can understand the instinct that motivates the majority to do that because, if it were to heed the words of that opinion, it would certainly have to reach a different result in this case.

*Porter* is based on the language of ORS 810.410(3):

"(3) A police officer:

"* * * * *

"(b) May stop and detain a person for a traffic infraction for the purposes of investigation reasonably related to the traffic infraction, identification and issuance of citation."

After quoting part of the legislative history, the court said:

> "From that history, we glean that the legislature sought to keep traffic infractions decriminalized and to reduce the attendant law enforcement methods as much as necessary to accomplish that goal. The legislature intended to satisfy the concerns expressed in *Brown v. Multnomah County Dist. Ct.*, [citation omitted], and thus to permit only minimal intrusions on Oregon drivers stopped for traffic infractions. The words of ORS 810.410(3)(b) reflect that intent by requiring that any investigation be 'reasonably related to the traffic infraction, identification and issuance of citation.' ORS 810.410(3) defines the authority of the police to respond to a traffic infraction; by implication, the statute proscribes any further action by the police, including a search, unless it has some basis other than the traffic infraction. A search that explores for evidence of other crimes or infractions is not 'reasonably related to *the* traffic infraction, identification and issuance of citation.' ORS 810.410(3)(b) (emphasis [supplied])." 312 Or at 119.

The applicability of that language to this case seems obvious to me. Defendant was stopped for traffic offenses, and that is all that the officers were then "investigating." They suspected no *crime* until defendant said that his operator's permit had been suspended and was unable to produce any other identification. The officer decided to take defendant into custody for failure to display an operator's license. ORS 807.570. Searching defendant or his car (let alone his house[1]) had, and could have had, nothing at all to do with any offense for which defendant had been stopped or that he had admitted. As the Supreme Court said in *Porter*:

> "This is not a case in which, while acting within the scope of the statute permitting investigation of the traffic infraction, the officer observed something that gave him probable cause to investigate a crime (when, of course, the warrant requirement still must be observed or excused)." 312 Or at 120.

---

[1] The record of the suppression hearing has an interesting element. The arresting officers testified that defendant consented to searches of his person, of his car and *of his house*. Without much explanation, the trial court explained that it believed that defendant had given the first two consents but not the third. That is, the trial court believed the officers' testimony as to two of the searches but not as to the third. That is impossible to comprehend—but it is not involved in this case, because the state does not challenge the suppression of evidence found in defendant's home.

Entirely aside from the defects in the Supreme Court's opinion as an opinion, its meaning is either very clear when applied to this case or is entirely misleading and requires further explanation. By their questioning, the police entered into an investigation that was entirely separate from any investigation that they were permitted to do under ORS 810.410(3)(b). The Supreme Court has said that that is exactly what the statute was intended to prohibit — and, unfortunately, it is exactly what the majority here would not only permit but encourage.

Defendant raised and preserved this reversible error in the trial court. His motion to suppress was based in part on this proposition:

" 'Police may * * * stop and detain a person for a traffic infraction for the purposes of investigation *reasonably related* to the traffic infraction, identification and issuance of citation.' ORS 810.410(b) (emphasis added [*sic*]). However, 'traffic stops should be the minimal possible intrusion on Oregon motorists and not an excuse to begin questioning, searching or investigating that is unrelated to the traffic reason for the stop.' *State v. Carter/Dawson*, 34 Or App 21, 32 (1978), *aff'd* 287 Or 479 (1979). Thus, when officers['] questioning is unrelated to or exceeds the permissible scope of questioning which justified the stop the fruits of that inquiry should be suppressed."

Aside from the impact of *State v. Porter, supra,* I would conclude that, even though we are bound by the trial court's finding that defendant consented to the search of his person and his car, he was in arrest custody and was not furnished any warnings of his right to refuse to consent. I would hold that the situation was inherently coercive and that the state failed to bear its burden to prove that any consent was voluntary.

I also believe that, in these circumstances, the majority's search-incident-to-arrest analysis under *State v. Owens,* 302 Or 196, 729 P2d 524 (1986), is wholly wrong. It was either a consent search or it was unlawful.

I dissent.