Argued and submitted November 21, 1991, reversed and remanded for new trial
August 12, 1992

# STATE OF OREGON,
*Respondent,*

*v.*

# ROBERT DARRELL BUCHOLZ,
*Appellant.*

## (10-89-10075; CA A66293)

836 P2d 180

Peter Gartlan, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender, Salem.

Meg E. Kieran, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

De MUNIZ, J.

Buttler, P. J., specially concurring.

Rossman, J., dissenting.

## De MUNIZ, J.

Defendant appeals his conviction for unlawful possession of a controlled substance. ORS 475.992. He claims that the trial court erred when it denied his motion to suppress evidence found during a warrantless search of a backpack. We reverse and remand.

In reviewing the lawfulness of a warrantless search, we are bound by the trial court's findings of historical facts, if they are supported by the evidence. *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991). While on patrol, Officer Barrong saw a car that was emitting visible exhaust. The driver did not signal before turning into the parking lot of a grocery store. Barrong stopped the car and asked the driver for her license and registration. She told him her name, but said that she did not have her license with her. Defendant, who was seated in the front passenger seat, told the officer that the car belonged to defendant's father. Neither the driver nor defendant produced the vehicle registration certificate. Barrong noticed a backpack on the floor near Knight, a passenger in the back seat. He asked whose it was, but no one answered. Barrong asked if he could look in the backpack, "thinking maybe the vehicle registration was in it." Knight handed the pack to Barrong, and nobody in the car objected. Barrong took the pack, went back to his patrol car and ran name checks on the occupants of the stopped car. He then looked in the pack and found drug paraphernalia, including a cotton ball that later tested positive for methamphetamine. He also found a wallet that belonged to defendant.

■■ Defendant concedes that Barrong lawfully stopped the car in which defendant was a passenger. The officer could see exhaust emissions, and the driver had failed to signal before turning into a parking lot.[1] When an officer makes a lawful traffic stop, he may detain the driver

"for the purposes of investigation reasonably related to the traffic infraction, identification and issuance of citation." ORS 810.410(3)(b).

---

[1] ORS 815.250 forbids the operation of a motor vehicle whose exhaust system is not in good working order. ORS 811.400 requires a driver to use appropriate signals before turning.

The officer may ask to see the driver's license, because he is entitled to know the driver's identity. *State v. Tourtillott*, 289 Or 845, 867-68, 618 P2d 423 (1980), *cert den* 451 US 972 (1981). The officer may also ask to see the vehicle registration. *State v. Hicks*, 89 Or App 540, 543, 749 P2d 1221 (1988).

In *State v. Porter*, 312 Or 112, 116-20, 817 P2d 1306 (1991), the Supreme Court thoroughly examined the legislative history of ORS 810.410(3) and concluded:

> "[T]he legislature sought to keep traffic infractions decriminalized and to reduce the attendant law enforcement methods as much as necessary to accomplish that goal. [The legislature intended] to permit only minimal intrusions on Oregon drivers stopped for traffic infractions." 312 Or at 119.

To give some teeth to its conclusion that an intrusion authorized by ORS 810.410(3) must be limited, the court declared:

> "ORS 810.410(3) defines the authority of the police to respond to a traffic infraction; by implication, *the statute proscribes any further action by the police, including a search, unless it has some basis other than the traffic infraction*." 312 Or at 120. (Emphasis supplied.)

Barrong testified that he asked to look in the pack, because he thought that he might find the vehicle registration in it. The trial court found that, "at the time he asked for consent, [Barrong] was still looking for evidence of the vehicle's ownership." That finding is supported by the evidence, and we are bound by it. *State v. Stevens, supra*, 311 Or at 126; *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). Barrong's testimony and the trial court's finding establish that his request for consent to search was made solely on the basis of the traffic infraction. He had no "basis other than the infraction" for requesting consent to search the pack. As a matter of law, he was forbidden from asking to look in the pack during the stop. The trial court erred when it denied defendant's motion to suppress.

Reversed and remanded for a new trial.

**BUTTLER, P. J.,** specially concurring.

Although I concur generally with the opinion of De Muniz, J., I write separately to present a slightly different analysis. Officer Barrong lawfully stopped the car in which

defendant was a passenger for two traffic infractions: The car was emitting visible exhaust, ORS 815.250, and the driver had failed to signal before making a turn. ORS 811.400. After the stop, Barrong was authorized to detain the driver "for the purpose of investigation" reasonably related to the traffic infraction, identification and issuance of a citation. ORS 810.410(3),(6). However:

> "Traffic stops should be the minimum possible intrusion on Oregon motorists, and not an excuse to begin questioning, searching or investigating that is unrelated to the traffic reason for the stop." *State v. Carter/Dawson*, 34 Or App 21, 32, 578 P2d 790 (1978), *aff'd* 287 Or 479, 600 P2d 873 (1979).

Barrong asked the driver for her driver's license and car registration. He was entitled to do that. She gave her name but said that she did not have her license with her. Defendant, who was seated in the front seat, said that his father owned the car and gave Barrong his name. He was asked for the registration but did not produce it. At that time, Barrong asked the name of the passenger in the rear seat, who gave his name—Knight. Barrong then noticed a nylon backpack on the floor near Knight and asked who the owner was.[1] No one claimed ownership. He asked if he could look through it.[2] Knight then handed it to him, and no one objected.

After the driver failed to produce her driver's license, Barrong had probable cause to arrest her for that offense. ORS 807.570. He was also authorized to cite her for failure to display the car registration. ORS 803.505. However, he had no authority to search for her license, even if he had arrested her for failure to produce her driver's license. There would have been no evidence for which to search incident to that arrest. The offense was completed when she failed to present her license. *State v. Scheer*, 99 Or App 80, 781 P2d 859 (1989). The same is true with respect to the failure to display or

---

[1] Although Barrong testified that, on the basis of his training and experience, automobile registration cards are usually kept in the glove box or attached to the sun visor, he did not ask for permission to look in either of those places.

[2] Barrong testified that he thought that the backpack might contain the driver's license, the car registration or "any number of things." He did not, however, open it until he had completed a records check at his patrol car and had requested back-up assistance.

present the car registration. Because he had no right to search, he had no authority to ask for consent to "look through" the backpack. By doing so, he exceeded the scope of his authority relating to the stop.

Even if Barrong had authority to ask for and receive consent to search the backpack, he did not open it until *after* he had completed a records check. Although he was entitled to extend the stop to make a records check to determine the registered owner and whether the car had been stolen, once he learned from the records check that the car had not been reported stolen, the lawful stop was at an end. The record is silent as to whether he also learned, as he could and should have, to whom the car was registered, although he testified that he was still concerned about the registration. That is why, he said, he opened the backpack. He did not find the registration but did find, as he said that he had anticipated finding, "any number of things." Extending the stop to search the backpack extended its duration unreasonably.

Because the evidence was unlawfully seized as a result of the search of the backpack, I agree that it should have been suppressed.

**ROSSMAN, J.,** dissenting.

I must dissent. The lead opinion holds together fairly well until it collapses at the end, where it finally divines an answer to what it acknowledges to be the determinative question: Did Officer Barrong act *reasonably* in asking to look in the backpack to determine ownership of the vehicle? Of course he acted reasonably; it is what is known as "good police work."

The analysis is as simple as this: The officer was in the midst of a statutorily authorized and ongoing investigation of a lawful traffic stop. ORS 803.505; ORS 803.320. As the majority concedes, he was rightfully trying to ascertain who owned the vehicle and whether the driver had a license. He testified that he thought that the vehicle registration could be in the backpack. The trial judge, who saw the witness firsthand, believed him. Given our limited review of trial court findings, that should be the end of the inquiry. The occupants of the vehicle gave the officer their voluntary

consent to look into the backpack. He looked, and he saw what there was to see. What is unreasonable about that?

The lead opinion misreads the governing statute and misperceives the word "reasonable." In doing so, it has set us on a dangerous course. I foresee the day when an officer, confronted with the same situation as was Barrong, accepts an invitation to open a backpack and—rather than dope—discovers a ticking bomb or a body part. Given the majority's holding today, that evidence would be inadmissible. That just cannot be right. Rather than having to scurry around then to find the right answer, we should do it now when it is staring us in our collective faces.