Argued and submitted May 28, 1993, affirmed January 5, 1994

STATE OF OREGON,
*Respondent,*

*v.*

KEVIN TODD JEFFERS,
*Appellant.*

(C91-09-34482; CA A74370)

866 P2d 486

David C. Degner, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Youlee Yim You, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

ROSSMAN, P. J.

## ROSSMAN, P. J.

Defendant appeals his conviction for delivery of a controlled substance. ORS 475.992(1). He assigns as error the trial court's denial of his motion to suppress evidence seized from his car, arguing that his consent to the search of the car was invalid. We affirm.

While parked in the parking lot of a motel at approximately 12:30 a.m., on September 8, 1991, Portland police officers Kelley and King saw defendant drive into the lot in a car that did not have a front license plate. They stopped him for the traffic infraction of failure to display registration plates. ORS 803.540(1)(b). Because defendant was unable to produce either a driver's license or any identification with his picture, the officers placed him under arrest for failure to present a license. ORS 807.570. King advised defendant of his *Miranda* rights, handcuffed him and placed him in the back of the patrol car, which was parked about 15 feet from defendant's car. In the meantime, Kelley had spoken with defendant's girlfriend, who was an occupant in one of the motel rooms. She expressed some concern about the possibility of the car being stolen.

While defendant sat in the patrol car, Kelley searched the driver's area of defendant's car for weapons, vehicle registration and some form of personal identification. During the search, he saw a box under the driver's seat that he believed could have contained a gun. He opened it and discovered several syringes and some marijuana. He immediately closed the box, put it back under the driver's seat, walked back to the patrol car and, without informing King of what he had found, told King to ask for defendant's consent to search the car. King told defendant that the officers

"were interested in searching the vehicle so [they] could find out who he was, interested in identifying him for the issuing of a citation for the traffic violation, and interested in obtaining * * * any relevant information about vehicle ownership, and whether or not he had any insurance."

Defendant consented to the search. At trial, King further explained the circumstances surrounding defendant's consent:

"I explained that our intention for the search of the vehicle was to help us find out who he was, and find out who the

vehicle belonged to, and that if we were to obtain information from anything in the car about him or the car, that a citation at the scene may be the way in which we could resolve * * * this traffic matter. And that that was our intention for the search of the car. And with that understanding, he said that it was okay if we looked in the car."

The officers searched the car and found, among other things, methamphetamine, a scale, drug records and a pager. Defendant ultimately confessed to being a methamphetamine dealer.

At the outset, the state acknowledges, and we agree, that Kelley's initial search of defendant's car was unlawful. Defendant contends that that illegality rendered the evidence obtained in the later consent search inadmissible under ORS 133.683[1] and Article I, section 9, of the Oregon Constitution,[2] because the officers exploited their knowledge acquired during the illegal search to obtain defendant's consent. The state maintains that the unlawful search does not require suppression of the evidence seized during the consent search, because defendant's consent was not obtained through exploitation of that illegality.

■ In *State v. Rodriguez*, 317 Or 27, 38, 854 P2d 399 (1993), the Supreme Court recently explained that "unlawful police conduct"[3] that precedes a consent search may have an impact on the admissibility of evidence seized during the

---

[1] ORS 133.683(1) requires the suppression of evidence discovered as a result of a search that is "carried out in such a manner that things seized in the course of the search would be subject to suppression." The statute is Oregon's codification of the "fruit of the poisonous tree" doctrine. *State v. Munro*, 96 Or App 238, 243, 772 P2d 1353 (1989).

[2] On appeal, defendant also argues, under the Fourth Amendment to the United States Constitution, that his consent was invalid because the initial illegal search was not sufficiently attenuated from the consent. The state argues that that contention was not raised in the trial court and should not be considered on appeal, and we agree. Defendant's argument under the federal constitution was not presented or in any way suggested by either his oral or written presentation to the trial court. Because that argument was not properly preserved for appellate review and does not present manifest error, we decline to address it. ORAP 5.45(2); *see also State v. Rodriguez*, 317 Or 27, 38 n 11, 854 P2d 399 (1993); *State ex rel Schrunk v. Metz*, 125 Or App 405, 867 P2d 503 (1993); *State v. Darlin*, 122 Or App 172, 179 n 8, 857 P2d 859 (1993).

[3] The phrase "unlawful police conduct" refers to "an act by a government entity or its agent that violates a defendant's rights under Article I, section 9, of the Oregon Constitution." *State v. Rodriguez, supra*, 317 Or at 38 n 12.

search in two ways. In some instances, the illegal conduct may relate to the issue of whether the person's consent was "voluntary" under the circumstances, *i.e.*, whether the consent was the product of the person's own free will or the result of coercion, express or implied. *See State v. Kennedy*, 290 Or 493, 502, 624 P2d 99 (1981); *State v. Johnson*, 120 Or App 151, 155, 851 P2d 1160 (1993). Here, defendant does not argue that his consent was involuntary.

■    The Supreme Court in *Rodriguez* also held that, if evidence is recovered during a consent search that is preceded by unlawful police conduct, the evidence must be suppressed when there exists a causal connection between the unlawful police conduct and the evidence discovered during the ensuing consent search, *and* the police "exploited" their unlawful conduct to secure the person's consent. "Exploitation occurs when the police take advantage of the circumstances of their unlawful conduct to obtain the consent to search." 317 Or at 39-40.

In *Rodriguez*, following a purportedly unlawful arrest,[4] a federal agent asked the defendant if he had any drugs or guns in his apartment. He replied, "No, go ahead and look." After confirming that the defendant had given consent to a search of the premises, the agent searched the apartment and found two guns. The defendant sought suppression of the guns, claiming that his consent was gained by exploitation of the illegal arrest. The court disagreed:

> "[I]t is apparent that the [federal] agent did not trade on or otherwise take advantage of the arrest to obtain defendant's consent to the search. Indeed, there is absolutely nothing in the encounter between the agent and defendant that can be construed as exploitation of the purportedly unlawful arrest. The mere fact that, but for the arrest, the agent would not have been standing in the doorway of defendant's apartment, in a position to ask defendant about drugs and guns, does not render the evidence discovered in the subsequent consent search inadmissible." 317 Or at 41.

Here, it is undisputed that the evidence seized during the consent search might not have been discovered had Kelley not

---

[4] The court assumed, without deciding, that the arrest violated Article I, section 9. 317 Or at 37.

previously conducted an illegal search of the car. The remaining and dispositive issue, then, is whether defendant's consent was procured by exploitation of that illegality.

The Supreme Court faced a set of circumstances similar to those presented here in *State v. Quinn*, 290 Or 383, 623 P2d 630 (1981), which defendant neglects to cite or discuss in his brief. In *Quinn*, a police officer illegally searched the defendant's car for the fruits of a burglary of a business establishment. Those fruits were discovered and seized. During the search, the officer also found several items of women's intimate apparel. Because those items were unrelated to the burglary, he left them in the car. Unbeknownst to the searching officer, defendant was also a suspect in a residential burglary and homicide. The detectives who were investigating the homicide were told about the undergarments in defendant's car. They met with defendant in jail and questioned him about the burglary of the business establishment. The defendant knew before being questioned that the police had found evidence of the business establishment burglary. He was, however, unaware of the discovery of the undergarments and during the interrogation there was no mention of their discovery. The detectives asked for and received defendant's consent to search his car. Pursuant to that consent, the car was searched again and the undergarments were seized. In holding that the undergarments were admissible, the court reasoned:

> "[T]he women's underwear might not have come to light had the officer not [conducted the prior illegal search], but when the police sought defendant's consent to search, they did not do so by exploitation of that illegal discovery. Rather, the consent was sought and given by defendant for reasons entirely distinct from that primary illegality." 290 Or at 396.

That same reasoning applies here. As previously discussed, the evidence seized during the consent search might not have been discovered had Kelley not illegally searched defendant's car. However, neither King nor Kelley mentioned that the car had been searched, and when defendant gave his consent, he was unaware that the car had been searched or that any incriminating evidence had been found. In these circumstances, it cannot be said that either officer traded on or took advantage of the illegal search to obtain

defendant's consent. *See, e.g., State v. Williamson,* 307 Or 621, 626, 772 P2d 404 (1989). Indeed, nothing occurred during the encounter between the officers and defendant that can be viewed as exploitation of the illegal search. Here, as in *Quinn*, defendant's consent was sought and given for reasons that were separate and distinct from the initial illegality. We therefore hold that the items discovered during the consent search were properly seized and that the trial court did not err in denying defendant's motion to suppress.[5]

Affirmed.

---

[5] In *State v. Weaver*, 121 Or App 362, 366, 854 P2d 962, *on recon* 124 Or App 615, 863 P2d 1273 (1993), one of our most recent cases on the validity of consent searches, we held that consent obtained *after* police have searched for *and* seized crime evidence does not ratify "a search and seizure that violated the state and federal constitutions at its inception." Here, however, Kelley did not seize any evidence during the initial illegal search of the car and there is no dispute that defendant's consent was obtained *before* the officers conducted the consent search. The only issue in this case is whether the officers exploited their prior unlawful conduct in securing defendant's consent. *Weaver*, therefore, is inapposite.