Argued and submitted May 4, 1992, affirmed January 19, 1994

## STATE OF OREGON,
*Respondent,*

*v.*

## JENARO AGUILAR,
*Appellant.*

(C88-06-33882; CA A70129)

867 P2d 520

Liza Jane Langford argued the cause and filed the brief for appellant.

Mary H. Williams, Assistant Attorney General, argued the case for respondent. With her on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General.

Before Richardson, Chief Judge, and Deits, Judge, and Durham, Judge pro tempore.

DEITS, J.

Durham, J. pro tempore, dissenting.

## DEITS, J.

Defendant appeals his conviction for possession and distribution of a controlled substance. ORS 475.992. He argues that the trial court erred in denying his motion to suppress. We affirm.

On June 4, 1988, Officer Kelley saw defendant's car parked in front of what he knew to be an operating drug house. He also saw a person whom he believed was the operator of the drug house leave the area of defendant's car and run up the steps of the house. Kelley believed that person was the operator of the drug house, because he matched the general description of the drug house operator. Five weeks earlier, Kelley had seen a person of similar appearance run up to the house as another car pulled away. The driver of that car admitted to Kelley that he had sold cocaine and heroin to the drug house operator. Kelley followed defendant's car as it pulled away from the curb. He testified that defendant seemed to be in a hurry and that he twice failed to signal before making a turn. Kelley stopped defendant for a traffic violation. He asked him for his driver license and a bill of sale. Defendant provided both. Kelley asked defendant: "Do you have any drugs on you or in your vehicle?" Defendant responded: "I don't think so." Kelley then asked defendant for consent to search. The trial court found

> "that Officer Kelley asked the Defendant if he would allow himself and the vehicle to be searched; the court finds that * * * Defendant's response was yes, and that the Defendant then stepped out of the vehicle without any request by the officer."

Kelley then requested a cover car and, while he waited for it to arrive, he searched defendant and found money and a pager. After the other officers arrived, he searched the car and found two baggies of heroin. He then arrested defendant and found another bag of heroin and some marijuana on defendant's person.

Defendant assigns as error the trial court's denial of his motion to suppress evidence discovered in the search of his car and person. He argues that the officer's actions exceeded the permissible scope of a traffic stop and that the officer did not have reasonable suspicion to stop him for the

drug offense. He also contends that his consent to the search was not voluntary.

■     It is unnecessary to decide whether Kelley had a reasonable suspicion to stop defendant for the drug offenses, because we conclude that his questioning of defendant during the traffic stop concerning the drug offenses and his request for consent were permissible. In *State v. Bonham*, 120 Or App 371, 852 P2d 905, *rev den* 317 Or 584 (1993), after the completion of a traffic stop, the officer questioned defendant concerning drug activities and asked for consent to search. We held that that was permissible. This case presents a different question, however, because here the questioning and request for consent occurred before the completion of the traffic stop.

As we discussed in *Bonham*, we have generally held that there is no prerequisite of reasonable suspicion or probable cause before an officer may ask a person for consent to search. In *Bonham*, we quoted *State v. Auer*, 90 Or App 459, 464, 752 P2d 1250 (1988), in which we said:

> "Neither the Supreme Court nor this court has ever held, or even suggested, that reasonable suspicion is a prerequisite to asking for consent to search."

We further explained in *Bonham*:

> "We recently upheld a request to search when an officer walked up to a citizen and, without probable cause to believe that a crime had been committed or even a reasonable suspicion, asked for permission to search. We assessed the totality of the circumstances and held that the consent was voluntary. *State ex rel Juv. Dept. v. Fikes*, 116 Or App 618, 842 P2d 807 (1992). The pertinent inquiry there was not whether the officer had authority to ask the question but whether, considering the totality of the circumstances, the defendant's consent was given of his own free will or was the product of coercion, express or implied. We have held that, even in circumstances where a request for consent to search followed illegal police conduct, consent is not automatically invalid. Rather, the burden on the state to prove voluntariness focuses on whether the consent was an exploitation of the prior illegality. *State v. Kennedy*, [290 Or 493, 624 P2d 99 (1981)]; *see State v. Mercado*, [105 Or App 582, 805 P2d 744, *rev den* 311 Or 482 (1991)]. The fact that a request for consent to search takes place after a traffic stop is a factor

that should be considered in evaluating whether, under the totality of the circumstances, the consent was voluntarily given or was the product of coercion. However, consent should not be invalidated solely because it follows a traffic stop." 120 Or App at 375-76.

█ We conclude that the same rationale should apply here. The fact that a request for consent occurs during the course of a traffic stop is a factor to consider in evaluating the voluntariness of the consent, but it does not automatically invalidate the consent. Contrary to the dissent's assertions, this conclusion is not inconsistent with the Supreme Court's decision in *State v. Porter*, 312 Or 112, 817 P2d 1306 (1991). In *Porter*, the officer lawfully stopped the defendant's car and arrested him pursuant to an arrest warrant. When the defendant stepped out of his car, the officer saw an open can of beer behind the driver's seat. While defendant was in the back seat of the patrol car, the officer searched the car for additional open containers and, during that search, found drugs. On appeal, defendant argued that the search was unlawful. The state argued that the officer was entitled to search for additional open containers under ORS 810.410(3)(b), which permits an "investigation reasonably related to [a] traffic infraction." 312 Or at 115. The Supreme Court determined that that statute did not authorize the warrantless search of defendant's car, because the search was not reasonably related to the traffic infraction: "When the officer found and seized from defendant's car the open can containing beer, he had all the evidence he needed to cite defendant." 312 Or at 120. The state did not argue that there was any other authority for the warrantless search of the defendant's car. The court held that the search was unlawful because it was not authorized by the statute, and no other basis independent of the statute had been argued to the court.

█ The dissent takes the position that the Supreme Court's reading of ORS 810.410(3)(b)[1] in *State v. Porter*,

---

[1] ORS 810.410 provides, in part:

"(3) A police officer:

"* * * * *

"(b) May stop and detain a person for a traffic infraction for the purpose of investigation reasonably related to the traffic infraction, identification and issuance of citation."

*limits* the authority of an officer during a traffic stop to ask a person for consent to search. It relies on the statement in *Porter* that ORS 810.410(3)(b) "proscribes any further action by the police, including a search, unless it has some basis other than the traffic infraction." 312 Or at 120. However, it is clear from the court's discussion in *Porter* that, in using the terms "any further action by the police," the court was referring to other police action for which authority to act is required. All of the examples that the court used in discussing the limitations imposed by ORS 810.410(3)(b) concerned police action such as stops or searches where specific authority is needed.[2] The specific question that the court was presented with in *Porter* was whether ORS 810.410(3)(b) gives an officer authority to conduct a warrantless search unrelated to the traffic stop. The Supreme Court held that it does not. This case presents a different issue, because it concerns police action that we have held does not need specific authority.

We addressed the same argument that the dissent is making here in *State v. Mesa*, 110 Or App 261, 265, 822 P2d 143 (1991), *rev den* 313 Or 211 (1992), in which we held:

"No justification is necessary for an officer to ask for consent. Consent may be requested following illegal police conduct, *State v. Williamson*, 307 Or 621, 772 P2d 404 (1989), or of a citizen on the street. Neither [ORS 810.410(3)(b)] nor *Porter*

---

[2] In contending that an officer must have authority to ask a person for consent to search, the dissent relies on decisions that concern the necessity of specific authority to conduct other types of police action such as stops and searches. For example, the dissent attempts to rely on the Supreme Court's decision in *State v. Farley*, 308 Or 91, 775 P2d 835 (1989), for the proposition that specific authority is required to ask for consent to search. However, that case is another example of police action for which specific authority is required. It involved an officer's request for a driver's license. ORS 807.570 limits the circumstances under which a license may be requested. ORS 807.570 provides, in part:

"(1) A person commits the offense of failure to carry a license or to present a license to a police officer if the person either:

"* * * * *

"(b) Does not present and deliver such license or permit to a police officer when requested by the police under any of the following circumstances:

"(A) Upon being lawfully stopped or detained when driving a vehicle."

In *Farley*, the court held that, because the reason for the stop dissipated, the officer no longer had authority under the statute to ask for the license. 308 Or at 94.

imposes such a limitation on officers conducting stops for traffic infractions, and it would make no sense to do so."[3]

A conclusion that an officer may not ask for consent to search during the course of a traffic stop would create an anomalous result. A police officer would be able to request consent to search under any circumstance other than during a traffic stop. An officer could walk up to a person on the street and ask for consent to search. *See State ex rel Juv. Dept. v. Fikes, supra.* Further, following illegal police conduct, an officer could request consent. The illegality would not automatically invalidate the consent; its validity would depend on whether, considering the particular circumstances, it was voluntarily given. *See State v. Meyer,* 120 Or App 319, 852 P2d 879 (1993). The Supreme Court did not hold in *Porter* that an officer could not request consent to search during the course of a traffic stop, nor is that a reasonable reading of the statute.

■ The critical inquiry, then, is not the officer's authority to ask, but whether the consent, if given, was the result of a person's free will or was the product of coercion, express or implied. The fact that the request occurred during a traffic stop is a relevant consideration in making that decision, but it does not end the inquiry. Here, the trial court found that defendant's consent was voluntarily given and we agree with that finding. There is nothing in the circumstances here that suggests coercion. Kelley was alone with defendant when he asked for consent. He did not draw his gun or make any threats, and he did not order defendant out of his car. The only fact that defendant argues supports the conclusion that Kelley used coercion was the fact that he asked him whether he had any drugs on his person or in his car. However, that request alone does not make the encounter coercive. We conclude that defendant's consent to the search was voluntary. The trial court did not err in denying defendant's motion to suppress.

Affirmed.

---

[3] Our statement in *State v. Bucholz,* 114 Or App 624, 836 P2d 180 (1992), that some basis other than the traffic infraction was necessary to justify a request to consent to a search, is inconsistent with this language.

**DURHAM, J. pro tempore,** dissenting.

The majority holds, for the first time, that *State v. Porter*, 312 Or 112, 817 P2d 1306 (1991), and ORS 810.410(3)(b) do not restrict the authority of a police officer, during a traffic stop, to request consent to search the vehicle. The officer's request was not reasonably related to any investigative purpose related to the stop, and it was not prompted by any circumstance arising before or during the stop that gave the officer a basis to make the request. The majority holds that an inquiry into the officer's authority to make the request is unnecessary, because defendant voluntarily consented to the search. The majority's analysis defeats the legislature's purpose in specifying the limits of an officer's authority during a traffic stop and disregards *Porter* and other cases. I dissent.

The majority's cardinal error is its failure to follow the correct methodology in assessing defendant's challenge to Kelley's authority during the stop. Unquestionably, the stop was a "seizure" under Article I, section 9, of the Oregon Constitution. *State v. Painter*, 296 Or 422, 426, 676 P2d 309 (1984). *Painter* requires that we scrutinize an officer's authority to stop a citizen once we determine that a stop has occurred: "[H]aving found that defendant was stopped, we examine whether the stop was authorized." 296 Or at 426. In *Nelson v. Lane County*, 304 Or 97, 102, 743 P2d 692 (1987), the court repeated that message in describing its analytical method in *State v. Atkinson*, 298 Or 1, 688 P2d 832 (1984), which involved the search of an impounded automobile:

"We declined to reach the question whether the search otherwise violated Article I, section 9, *without first determining whether the activity was authorized by law and carried out pursuant to regulation.*" (Emphasis supplied.)

In an accompanying footnote, the court said:

"We often have stressed the need to examine statutory authority *and the limitations imposed by that authority* before reaching any constitutional question." 304 Or at 102 n 2. (Emphasis supplied.)

The court cited 12 Oregon Supreme Court cases in support of that proposition. In light of these authorities, I cannot accept the majority's argument that it can abort any inquiry into

Kelley's authority during the stop, including any limitations on that authority, by leaping to the issue of the voluntariness of defendant's consent.

This case does not concern a stop to investigate criminal activity. The officer had no specific, articulable facts that would give rise to a reasonable suspicion that defendant had committed a crime. ORS 131.615(1). In *State v. Moya*, 97 Or App 375, 775 P2d 927 (1989), we found a lack of reasonable suspicion for a stop on facts stronger than those in this record.

ORS 810.410 states the extent of, and limits on, Kelley's authority during the traffic stop. It provides, as material:

"(2) A police officer may issue a citation to a person for a traffic infraction * * * when the traffic infraction is committed in the police officer's presence * * *.

"(3) A police officer:

"(a) Shall not arrest a person for a traffic infraction.

"(b) May stop and detain a person for a traffic infraction for the purposes of investigation reasonably related to the traffic infraction, identification and issuance of citation."

*State v. Porter, supra,* 312 Or at 119, states the legislature's intention in adopting subsection 3(b):

"From that history, we glean that the legislature sought to keep traffic infractions decriminalized and to reduce the attendant law enforcement methods as much as necessary to accomplish that goal. The legislature intended to satisfy the concerns expressed in *Brown v. Multnomah County Dist. Ct.,* [280 Or 95, 570 P2d 52 (1977)] and thus to permit only minimal intrusions on Oregon drivers stopped for traffic infractions. The words of ORS 810.410(3)(b) reflect that intent by requiring that any investigation be 'reasonably related to the traffic infraction, identification and issuance of citation.' ORS 810.310(3) defines the authority of the police to respond to a traffic infraction; by implication, the statute proscribes any further action by the police, including a search, unless it has some basis other than the traffic infraction. A search that explores for evidence of other crimes or infractions is not 'reasonably related to *the* traffic infraction, identification and issuance of citation.' ORS 810.410(3)(b) (emphasis added)."

In *Porter*, the officer stopped and arrested a driver on a fugitive warrant and placed the defendant in his patrol car. He saw an open beer can on the floor of the defendant's car and seized it. He saw no other evidence of crime. However, he began searching the car, to see if he could find another can with more beer in it. The court held that the search for additional evidence of the open container violation was irrelevant to that traffic infraction because

> "he had all the evidence he needed to cite defendant for violating the open container law. ORS 810.410(3)(b) instructed him to investigate no further." 312 Or at 120.

The court stated its holding as follows:

> "We hold that the search in this case exceeded the scope of investigation permitted by ORS 810.410(3) and that there was no other lawful basis for the search. The trial court should have suppressed the evidence obtained in violation of ORS 810.410(3), because the object of that statute is to define the authority of officers to respond to a traffic infraction. *See State v. Davis,* 295 Or 227, 236, 666 P2d 802 (1983) ('when the object of the statute is to define the authority of officers to seize or to search a person or property, * * * the court * * * has given effect to the statute by denying the state the use of evidence that it would not have secured if its officer had respected the rights that the statute was designed to protect')." 312 Or at 121. (Footnote omitted; omission in original.)

The central teaching of *Porter* is that ORS 810.410(3) "define[s] the authority of officers to respond to a traffic infraction." 312 Or at 121. That statute "proscribes any further action by the police, including a search, unless it has some basis other than the traffic infraction." 312 Or at 120.

The majority reasons that the search was independently authorized because, when Kelley asked for permission to search, defendant consented. That evades the issue. We must first ask: Does ORS 810.410(3) limit Kelley's authority to request permission to search the car? Questioning a driver about whether he will consent to a search is a proscribed "further action by the police," 312 Or at 120, unless that police action has some basis other than the traffic infraction.

The majority's response to *Porter* is to evade it. The majority says:

> "[I]t is clear from the court's discussion in *Porter* that in using the terms 'any further action by the police,' the court was referring to other police action for which authority to act is required." 126 Or App at 27.

Unlike the majority, I am not willing to say that the Supreme Court did not mean what it plainly said. As *Porter* explains, the legislature chose to proscribe "any further action" by police during a stop unless it is related to the purpose of the stop, or has a basis independent of the stop. That choice is based on the legislature's goal to decriminalize traffic infractions and "to permit only minimal intrusions on Oregon drivers stopped for traffic infractions." 312 Or at 119. A traffic stop is no longer the "minimal intrusion" intended by the legislature if it also includes questioning by the officer that seeks consent to search the car, where such questioning has no basis independent of the purpose of the stop. The majority's revision of *Porter* predictably will elongate traffic stops for no reason related to the enforcement of traffic laws, in violation of the policy behind ORS 810.410(3)(b). The majority opinion promulgates a different policy simply because the majority disapproves of the legislature's policy.

This court has applied *Porter* to a purported consensual search of property during a traffic stop. In *State v. Bucholz*, 114 Or App 624, 836 P2d 180 (1992), a stopped driver failed to produce her license or display the car registration. Although the officer had all the evidence he needed to arrest or cite the driver for those violations, he asked for permission to look in a backpack to find the vehicle registration. A passenger gave him the backpack. He searched it and found crime evidence. Citing *Porter*, we held that

> "[h]e had no 'basis other than the infraction' for requesting consent to search the pack. As a matter of law, he was forbidden from asking to look in the pack during the stop." 114 Or App at 627.

The majority fails to explain why the request for consent to search in *Bucholz* stands on any different legal footing than the request for consent in this case.[1]

---

[1] The majority relies on *dictum* in *State v. Mesa*, 110 Or App 261, 265, 822 P2d

The majority's premise that an officer does not need authority to ask a person for consent to search, 126 Or App at 27, ignores the fact that the request here occurred during a traffic stop, during which *every* question or investigative action must be reasonably related to the purpose of the stop. In *State v. Farley*, 308 Or 91, 775 P2d 835 (1989), an officer stopped a car that displayed no license plates. However, he realized, as he approached the driver, that the car bore a temporary permit and was operating lawfully. The court found that

> "the reason for the stop had dissipated and that no further investigation of the validity of the temporary permit or the identity of the driver was necessary." 308 Or at 93.

Nevertheless, the officer, following his routine procedure, asked the driver for his license. In response, the driver admitted a separate traffic violation. Applying the limitation in ORS 810.410(3)(b), the court held that the officer was not authorized to request the license, because that question was no longer reasonably related to the purpose of the stop:

> "Having made a lawful stop, however, the officer could ask defendant to show his driver license only for the purposes of investigation reasonably related to the stop. Upon seeing the temporary permit, the justification of any investigation was vitiated. *Plain and simple, the officer had no statutory authority to proceed further. That authority ended with the officer's discovery that the traffic infraction he was investigating had not actually occurred.*" 308 Or at 94. (Emphasis supplied.)

The majority's attempt, in a footnote, to distinguish *Farley* is an evasion of the language emphasized above. 126 Or App at 26 n 1. According to the majority, the court's statement that "the officer had no statutory authority to proceed further" means that the officer, nevertheless, could ask for permission to search the car and search it, or take any

---

143 (1991), which concerned a request for consent to search conveyed while the "defendant was lawfully under arrest." 110 Or App at 264. *State v. Aguilar, supra,* 126 Or App at 27. The *holding* in *Mesa,* which is what counts, is that the statutory limits on an officer's authority during a traffic stop do not apply once the officer makes a full custody arrest. I agree with that holding. The majority then describes the *holding* in *State v. Bucholz* as "inconsistent with" the *dictum* from *State v. Mesa.* 126 Or App at 27 n 2. That statement is not logical. It demonstrates that the majority is willing to criticize *Bucholz,* but unwilling to distinguish or overrule it.

other action not requiring specific statutory authority. Nothing in *Farley* justifies the judicial creation of such a sweeping rule.

The majority cites *State v. Auer*, 90 Or App 459, 464, 752 P2d 1250 (1988), and *State v. Bonham*, 120 Or App 371, 852 P2d 905, *rev den* 317 Or 584 (1993), for the proposition that reasonable suspicion is not a prerequisite to asking for consent to search. *Auer* involved an officer's request for consent to search conveyed to a suspect in a full custody arrest. *See also State v. Jacobus*, 318 Or 234, 864 P2d 861 (1993); *State v. Jeffers*, 125 Or App 596, 866 P2d 486 (1994). *Bonham* purported to address a request for consent to search conveyed after a traffic stop had ended. Whatever may be an officer's authority to seek permission to search in those settings, those cases do not address an officer's authority *during a traffic stop*.[2]

We have held that the statutory restriction of an officer's authority during a stop means that

> "[t]raffic stops should be the minimum possible intrusion on Oregon motorists, and not an excuse to begin questioning, searching or investigating that is unrelated to the reason for the stop." *State v. Carter/Dawson*, 34 Or App 21, 32, 578 P2d 790 (1978), *aff'd* 287 Or 479, 600 P2d 873 (1979).

Kelley's questioning of defendant about whether he would agree to a search was not related to the stop and, thus, was not authorized. The unlawful character of the questioning and detention from that point requires suppression of evidence seized during the search. *State v. Auer, supra*, 90 Or App at 464.

I dissent.

---

[2] In a number of police-citizen encounters, other than traffic stops, the Supreme Court has analyzed whether illegal police conduct tainted a person's consent to a search, and whether the police "exploited" their unlawful conduct to secure the person's consent. *See State v. Rodriguez*, 317 Or 27, 41, 854 P2d 399 (1993). There is no need to examine the question of exploitation here, because ORS 810.410(3) defines the authority of officers to seize or to search during a traffic stop. We give effect to the statute by denying the state the use of evidence that it would not have obtained had the officer observed the statutory limits on his authority. *State v. Porter, supra*, 312 Or at 121. Even if the "exploitation" issue was a relevant inquiry here, the state did not prove that no exploitation occurred. Because the request for consent itself was the unauthorized action, police necessarily exploited that illegality to obtain the consent to search.